[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE AMENDED COMPLAINT (NO. 105)
On February 27, 1992, the plaintiff, Riverbridge Associates Limited Partnership ("Riverbridge"), filed a four count amended complaint against the defendants, Chase Manhattan Bank of Connecticut ("Chase Conn.") and Chase Manhattan Bank ("Chase NY"). The first count of the amended complaint alleges that the plaintiff Riverbridge leased office space to Citytrust Corporation under a five year lease agreement, and on August 9, 1991, the FDIC was appointed receiver of Citytrust's assets pursuant to 28 U.S.C. § 1821, et seq., the Financial Institutions Reform, Recovery Enforcement Act of 1989 ("FIRREA"). The first count further alleges that on that same day the FDIC entered into an agreement with the defendant Chase N.Y. whereby Chase N.Y. agreed "to acquire assets of Citytrust." First Count, para. 6.
The plaintiff alleges that Chase Conn. thereafter "commenced . . . its banking business" in the premises formerly leased by Citytrust, and that "on August 21, 1991, the plaintiff's General Partner wrote to the defendants advising [them] that the Chase tenancy . . . was acceptable to the plaintiff." Plaintiff's Amended Complaint, First Count, para. 8. The plaintiff further alleges that on August 28, 1991, defendant Chase N.Y. sent the plaintiff a letter "stating Chase's intention to assume the aforesaid lease," and enclosed a Landlord's Estoppel and Consent Letter for the plaintiff to sign. First Count, paras. 9-10. (See also Exhibit A, "Letter from Chase to Riverbridge;" Exhibit B, "Landlord's Estoppel and Consent Letter.")
The plaintiff alleges that on September 3, 1991, the plaintiff executed the estoppel letter and returned it to Chase N.Y. and that on September 26, 1991, the FDIC notified the plaintiff that "Chase Conn. would not assume [the] lease and that the FDIC intended to disaffirm the same." First Count, paras. 11, 13. The plaintiff also alleges that the defendants subsequently advised the plaintiff that they would not honor the lease agreement after November 29, 1991. See First Count, para. 14. The plaintiff further alleges that Chase Conn. continued to conduct business on the leased premises until November 29, 1991, and that "the purported repudiation of [the lease] Agreement . . . is a material breach by the Defendant Chase Con[n.] of its Agreement to assume said Lease." First Count, para. 16.
CT Page 8580 The second count of the amended complaint alleges that the defendants' actions constituted "a constructive assumption by the Defendant Chase Con[n.] of the Lease between the Plaintiff and Citytrust," and that the "repudiation of the obligations of such assumed Lease by the Defendants is a clear anticipatory breach of the lease." Second Count, paras. 15-16.
In the third count of its amended complaint, the plaintiff incorporates the first and second counts and alleges that the defendants "are equitably estopped from asserting as justification for their [breach] . . . the purported disaffirmation of the lease by FDIC." Third Count, para. 17. The plaintiff's fourth count alleges that the defendants' actions constitute a CUTPA violation pursuant to General Statutes 42-110a, et seq.
On April 24, 1992, the defendants filed a motion to strike the plaintiff's amended complaint. See Motion to Strike, no. 105, and Memorandum of Law in Support, no. 106. The plaintiff has not filed a memorandum of law in opposition, but the plaintiff did appear at the hearing of said motion and offered oral argument in support of its position.
A motion to strike filed pursuant to Connecticut Practice Book 152 challenges the legal sufficiency of the pleading; Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985); and is properly granted where the pleading alleges legal conclusions unsupported by facts. Mora v. Aetna Life Ins. Co., 13 Conn. App. 208, 211, 535 A.2d 390 (1988). Where the motion to strike is directed at an entire complaint, the motion "`must . . . fail if any of the plaintiff's claims are legally sufficient.'" Whelan v. Whelan, 41 Conn. Sup. 519, 520, ___ A.2d ___ (1991), quoting Doyle v. A P Realty Corp.,36 Conn. Sup. 126, 127, 414 A.2d 204 (1980). In determining the legal sufficiency of the pleading, the trial court may not look beyond the pleading for facts not alleged therein. Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86, 449 A.2d 986 (1982).
I. FIRST COUNT
A. LEGAL SUFFICIENCY OF THE ALLEGATIONS AS TO THE DEFENDANT CHASE CONN.
The defendants argue that the plaintiff's breach of contract claim in the first count fails to allege an assignment from FDIC to Chase N.Y. or Chase Conn. and, therefore, the claim is legally insufficient. The defendants further contend that, insofar as the second, third and fourth counts are based upon the first count, these claims are also legally insufficient.
The first count of the plaintiff's amended complaint CT Page 8581 alleges that Chase N.Y. mailed a letter to the plaintiff "stating Chase CT's intention to assume the . . . lease [obligations]." Plaintiff's Amended Complaint, First Count, para. 8. A copy of this letter attached to the amended complaint states that "Chase desires, and hereby requests, that you [the plaintiff] consent to a proposed assignment of such lease from . . . the FDIC . . . to Chase [N.Y. or its designee] so that Chase [N.Y. or its designee] can continue to conduct business in the bank branch pursuant to such lease." Plaintiff's Amended Complaint, Exhibit A. The letter further states that, "[i]n connection with the proposed assignment, Chase [CT] would assume all of Tenant's obligations under such lease which arise from and after the date of the assignment." Plaintiff's Amended Complaint, Exhibit A. (Emphasis added.)
The "estoppel and consent letter" enclosed with the Chase letter summarizes various terms and obligations arising under the lease, and provision "C" of that letter states: "We hereby consent to the proposed assignment of the Lease from . . . the FDIC to Chase, such that following the acceptance of such assignment by Chase and assumption of the tenant's obligations, Chase shall be deemed to be the tenant under the lease." Exhibit B to Amended Complaint. (Emphasis added.)
The defendants argue that the foregoing language demonstrates both Chase entities' intention to be bound by the lease only after Chase N.Y. had formally accepted the assignment from the FDIC. The defendants, therefore, contend that plaintiff's claim for breach of contract depends upon the existence of an assignment from the FDIC to Chase, and in the absence of such an allegation, the plaintiff's first count fails to state a claim for which relief may be granted.
The court disagrees. The plaintiff's claim is not based solely upon the express contents of the letters but, rather, includes allegations of conduct on the part of the defendants that reasonably support a claim for breach of an implied contract.
The first count of the plaintiff's amended complaint alleges that, after the plaintiff signed and returned the "consent and estoppel" letter to Chase, the defendant Chase Conn. moved into the leased premises, conducted business there, and proceeded to make monthly rental payments over a period of three months. (Para. 12, First Count.) The plaintiff also alleges that the letters and conduct of the defendants "constituted an Agreement by the parties for the assumption, by the Defendant, Chase Connecticut of the aforesaid lease," and that "[t]he purported repudiation of such agreement . . . is a material breach by the Defendant, Chase Connecticut of its CT Page 8582 Agreement to assume said lease." (Paras. 15-16, First Count.)
The defendants have apparently misconstrued the thrust of the plaintiff's claim as plead in the first count. The defendants are predicating their position on the assumption that the "contract" at issue is the "lease" between Citytrust and the plaintiff. In fact, a closer analysis of the language of the first count discloses that the "contract" at issue is an agreement to assume the lease in question — an agreement preliminary to the actual assumption. Based on this analysis, an allegation of an assignment of FDIC's interests in the lease is unnecessary to establish an agreement to assume that lease.
The legal relation of the parties depends upon their intention as manifested by their conduct and the language of the alleged contract. See Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 158, 595 A.2d 872 (1991) (intention of parties is a question of law when "there is definitive contract language"); Smith v. Heuro Realty Corp., 199 Conn. 330,339-340, 507 A.2d 980 (1986) (determination of terms and conditions of a contract is a question to be resolved by the trier of fact); Lester v. Resort Camplands International, Inc.,27 Conn. App. 59, 65, ___ A.2d ___ (1990) ("`whether a writing is a complete integration of an agreement . . . depends on . . . [the] intention [of the parties], evidence as to which is sought in the language of the parties and the surrounding circumstances.'" [Citation omitted.]) See also E. Fainsworth, Contracts, 3.7, 8.2-8.4, pp. 172, 175, 177, 178-79, 188-189, 351-353, 358-360, 362 (1990) (discussing meaning of offer and acceptance, conditions, and judicial construction of parties' intent to be bound).
Thus, "regardless of a party's actual intent, if he conducts himself so as to lead the other party reasonably to conclude that he is accepting an offer to contract, acceptance has taken place as a matter of law." John J. Brennan Construction Corp., Inc. v. Shelton, 187 Conn. 695, 709,448 A.2d 180 (1982). Whether the conduct of the parties and the surrounding circumstances constitutes an implied contract is a question of fact. Id., 710; E. Fainsworth, supra, 178-79, 186-89 (noting that questions relating to intention in the context of preliminary agreements and "letters of intent" are fact specific and depend upon a variety of circumstantial factors). See also Dacourt Group, Inc. v. Babcock Industries, Inc., 747 F. Sup. 157, 160 (D.Conn. 1990) (discussing factual basis from which binding preliminary agreement and duty of good faith can be implied).
Consequently, the court concludes that the plaintiff has alleged sufficient facts from which a claim for breach of CT Page 8583 implied contract to assume the lease in question may be proved against the defendant Chase Conn. The plaintiff's allegations relating to Chase Conn.'s use of the leased premises between September and December of 1991, coupled with the ambiguous intentions manifested in the letters between the plaintiff and Chase, may constitute a binding preliminary agreement between the parties which required the defendant Chase Conn. to use good faith in performing the conditions of that agreement. And, whether the assignment of the lease was a condition precedent to performance under the contract is also a question of fact which depends upon evidence not appropriately considered on a motion to strike. For these reasons, the court concludes that, as to the defendant Chase Conn., the defendants' motion to strike should be and is hereby denied on this ground.
B. LEGAL SUFFICIENCY OF THE ALLEGATIONS AS TO THE DEFENDANT CHASE, N.Y.
The defendant Chase N.Y. argues that the first count fails to allege any wrongdoing against Chase, N.Y. and, therefore, the count should be stricken as to Chase, N.Y. With this position the court does agree. The plaintiff fails to allege that Chase N.Y. itself breached any alleged contract to assume the lease in question. Furthermore, the plaintiff does not allege any factual predicate from which Chase N.Y. may be held liable for Chase Conn.'s alleged breach. Therefore, as to the defendant Chase N.Y., the first count is legally insufficient, and defendant Chase N.Y.'s motion to strike the first count is hereby granted.
II. WHETHER FIRREA BARS THE PLAINTIFF'S AMENDED COMPLAINT
The defendants further argue that the plaintiff's complaint is barred by FIRREA, 12 U.S.C. § 1281. The defendants contend that since FIRREA provides the Federal Depository Insurance Corp. ("FDIC") with the authority to repudiate commercial leases, the plaintiff is barred from challenging the defendants' conduct. The court disagrees. The defendants misconstrue the doctrine of preemption as it relates to FIRREA. Federal law supersedes or "preempts" state causes of action only where:
 Congress has legislated comprehensively to occupy an entire field of regulation . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives. CT Page 8584
Serrano v. Serrano, 213 Conn. 1, 5, 566 A.2d 413 (1989) (citations omitted); accord, Times Mirror Co. v. Division of Public Utility Control, 192 Conn. 506, 510-511, 473 A.2d 768
(1984). Thus, the mere fact that federal legislation regulates a particular commercial field or transaction does not mean that state laws are preempted. See Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489, 494-95, 512 A.2d 199
(1986) (federal medicare reimbursement legislation does not preempt the state from regulating overall costs at individual medical facilities.)
Clearly, FIRREA regulates the authority of the FDIC in its capacity as receiver of assets. See 12 U.S.C. § 1281(d); see also Defendants' Memorandum, #106, p. 18 (where the defendants specifically acknowledge that FIRREA governs the conduct of the FDIC). However, FIRREA does not explicitly regulate conduct by third parties who, like the defendants, allegedly enter into binding preliminary agreements with regard to financial interests that are held by the FDIC when the agreement is entered but which are assignable at a future date. Furthermore, the underlying objectives promoted by FIRREA are not impeded or contradicted by the plaintiff's breach of contract claim since the claim is not directed against the FDIC and does not challenge the FDIC's right to repudiate under FIRREA.
For the foregoing reasons, the court concludes that the defendants' motion to strike the first count should be denied on this ground. Further, insofar as the second, third and fourth counts of the amended complaint are based upon the first count, FIRREA does not preempt the plaintiff's remaining claims, and the defendants' motion based on -this ground should be and is hereby denied as to all four counts of the amended complaint.
III. SECOND COUNT
The second count of the plaintiff's amended complaint alleges that the actions of the defendants set forth in the first count constitute a constructive assumption by Chase Conn. The court disagrees. The statute of frauds, General Statutes52-550(a)(4) — (a)(5), bars the plaintiff's claim for breach of a constructive assumption. Sections 52-550(a)(4), (a)(5) require that any assignment of a lease for a term of more than one year must be in writing. Insofar as the plaintiff's second count relies upon an implied, rather than express, assignment of obligations and fails to allege the existence of a written contract, it is legally insufficient and should be and is hereby stricken as to both defendants.
CT Page 8585 IV. THIRD COUNT
The plaintiff alleges in the third count of its amended complaint that the defendants are estopped from asserting valid repudiation by the FDIC as a defense to their alleged obligations. Again, the court disagrees.
The allegations in the third count do not state an independent cause of action for damages that are not otherwise recoverable in the breach of contract claim in the first count. Rather, the third count is a defensive pleading which should be raised by way of reply after the defendants have filed an answer and any special defenses that are appropriate. Therefore, the third count should be and is hereby stricken as to both defendants.
V. FOURTH COUNT
The plaintiff alleges in the fourth count of its amended complaint by way of incorporation by referral to the first count that the defendants' conduct constitutes a CUTPA violation pursuant to General Statutes 42-110a. The defendants move to strike this claim on the ground that CUTPA does not apply to banks, and further, 12 U.S.C. § 1821, et seq., the Financial Institutions Reform, Recovery Enforcement Act of 1989 (FIRREA), preempts the application of CUTPA to the disputed transaction in this case.
This court can find no Connecticut appellate decision which has determined whether CUTPA applies to banking transactions. See Gaynor v. Union Trust Co., 216 Conn. 458,482, 582 A.2d 190 (1990) (where court expressly declined to consider the question). Superior court decisions addressing this issue are in conflict, some holding that CUTPA applies to banks; others concluding that CUTPA is inapplicable. See Bridgeforth v. Fleet Bank, 7 Conn. L. Rptr. 27, 27-28 (July 27, 1992, Hadden, J.) (most recent case holding that CUTPA does not apply to banks); contra, Andrus v. North American Bank,3 Conn. L. Rptr. 434 (April 3, 1991, Fuller, J.).
The cases holding that CUTPA applies to banking transactions justify such conclusion on the basis that CUTPA does not expressly exempt banks the way the Federal Trade Commission Act ("FTCA") does, and CUTPA's applicability should be broadly construed to achieve its policy of promoting fair consumer transactions. See Andrus v. North American Bank, supra; Economic Development Associates v. Cititrust,3 Conn. L. Rptr. 403 (1991) (Draganis, J.); Westledge Real Estate, Inc. v. Suffield Bank, 3 Conn. L. Rptr. 170 (1991) (Clark, J.).
CT Page 8586 In contrast, cases holding that CUTPA does not apply to banking transactions rely upon the fact that under the FTCA,15 U.S.C. § 45(a)(2), banks are exempt from liability, and further, banks are already regulated by various state and federal legislation. See Bridgeforth v. Fleet Bank of Connecticut, supra, 28; Evervest, Inc. v. Advest Bank,4 Conn. L. Rptr. 423 (August 12, 1991, Wagner, J.); Washington Trust Co. v. Alland Associates, 3 Conn. L. Rptr. 447 (April 9, 1991, Leuba, J.).
Although there is disagreement as to whether CUTPA exempts all banking transactions from its reach, the allegations pertaining to the disputed transaction in the present case demonstrate that CUTPA is applicable. General Statutes 42-110c
expressly exempts all "transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." (Emphasis added.) The burden of proving exemption rests with the party claiming the exemption, and in the present case, the defendants have failed to raise any basis for preemption other than FIRREA.
For the reasons already enunciated with regard to the first count, FIRREA does not preempt the CUTPA claim in this case since the claim is directed against the defendants and FIRREA only regulates the conduct of the FDIC.
For the foregoing reasons, the court concludes that the fourth count is legally sufficient, and the defendant's motion to strike should be and is hereby denied as to Chase Conn. Insofar as the fourth count attempts to allege a CUTPA claim against the defendant Chase N.Y., it is legally insufficient. The fourth count is premised upon the breach of contract claim set forth in the first count and, as previously reasoned, the first count fails to allege a legally sufficient cause of action against Chase N.Y. Consequently, the fourth count should be and is hereby granted as legally insufficient insofar as it is directed against Chase N.Y.
In summary, as to the defendant Chase N.Y., the plaintiff's entire amended complaint is stricken. As to the defendant Chase Conn., the second and third counts only are stricken. The first and third counts remain viable claims.
L. SCOTT MELVILLE, JUDGE CT Page 8587