[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS TO STRIKE
The defendant Roncalli moves to strike counts fourteen and fifteen of Plaintiffs' Third Amended CT Page 1953 Complaint.
The defendant Connecticut National Bank ("CNB") and Scharfenberger move to strike counts one through thirteen of Plaintiffs' Third Amended Complaint.
This action was instituted on January 7, 1992. On September 4, 1992 plaintiffs Gerard H. Morrissey and Marjorie M. Morrisey filed a fifteen count third amended complaint against Connecticut National Bank ("CNB"), Raymond J. Scharfenberger, Vice President of CNB, and Roncalli Institute, Inc. Plaintiffs allege that, inter alia, defendants CNB and Scharfenberger and a third party, Mr. Cronen, disbursed plaintiffs' loan proceeds of approximately $700,000.00 without plaintiffs' knowledge to a Mr. Hession, defendant Roncalli or defendant CNB to satisfy defendant Roncalli's loan obligations to CNB. Counts one through eight of the Third Amended Complaint against CNB and Scharfenberger allege: breach of fiduciary duty, fraudulent misrepresentation, recission, negligent misrepresentation, recission, negligence, CUTPA, and CUTPA. Counts nine through thirteen of the third complaint against defendant CNB allege: breach of contract, breach of covenant of good faith and fair dealing, CUTPA, conversion, and conversion. Counts fourteen and fifteen of the Third Complaint against defendant Roncalli allege: conversion and unjust enrichment.
Presently before the court are the following motions and memoranda:
Defendant Roncalli's June 2, 1992 motion to strike what are now counts fourteen and fifteen of the third amended complaint and a supporting memorandum of law,
Plaintiffs' June 16, 1992 memorandum in opposition to Roncalli's motion to strike,
Defendants CNB and Scharfenberger's July 7, 1992 motions to strike counts one through thirteen of the Third Amended Complaint and supporting memoranda of law, and
Plaintiffs' August, 6, 1992 memorandum in CT Page 1954 opposition to CNB and Scharfenberger's motion to strike.
The motion to strike challenges the legal sufficiency of a pleading. Practice Book 152; Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490,495, 605 A.2d 862 (1992). In reviewing a motion to strike, the court must take the facts to be those alleged in the complaint. Id. The court should construe the complaint "in the manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465,471, 574 A.2d 1 (1991). A motion to strike may not speak to the merits of the count. See Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990). The court "cannot be aided by the assumption of any facts not therein alleged." Liljedahl Bros. Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990). "[I]f a `pleading . . . on its fact is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted,' a motion to strike is required." Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991).
Count One — Breach of Fiduciary Duty
Defendants argue that count one should be stricken in that the plaintiffs fail to allege any facts that would transform a lender-borrower relationship into a fiduciary relationship between the plaintiffs and defendants. Defendants further argue that no investment advice was given and therefore there was no reliance.
Plaintiffs counter that the allegations are ample to permit proof of a fiduciary duty.
 Rather than attempt to define "a fiduciary relationship in precise detail and in such a manner to exclude new situation," we have instead chosen to leave "the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Citations omitted.)
Dunham v. Dunham, 204 Conn. 303, 320, 528 A.2d 1123
CT Page 1955 (1987).
 A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. (Citations omitted.) The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. (Citations omitted.)
Id., 322.
A fiduciary relationship has been recognized in consumer banking transactions. See Mastroberti v. Centerbank, 6 CSCR 41 (November 15, 1990, McDonald, J.).
In the present case, the plaintiffs allege that defendants CNB and Scharfenberger occupied a fiduciary relationship with the plaintiffs in that: (1) the plaintiffs have been CNB customers since at least 1982, (2) in 1985 plaintiffs funded an investment through a loan from CNB, handled by plaintiffs' personal banker Scharfenberger, (3) CNB followed certain procedures in handling plaintiffs' investment to safeguard plaintiffs' interests, (4) in 1989 plaintiffs informed Scharfenberger of plaintiffs' desire to borrow from CNB for investment purposes, (5) plaintiffs explained that they expected the investment mechanics to be the same as those used for the first investment. Plaintiffs allege that defendants CNB and Scharfenberger failed to follow the same investment mechanics resulting in financial loss to the plaintiffs. (Plaintiffs' Third Amended Complaint, Count One, paras. 5-43).
We find that plaintiffs have alleged sufficient facts of a trust relationship and a duty to represent plaintiffs interests so as to survive the motion to strike count one.
Count Two — Fraudulent Misrepresentation Nondisclosure CT Page 1956
Defendants argue that the court should strike count two of the plaintiffs' complaint in that the plaintiffs fail to allege a false statement. Plaintiffs argue in opposition that they allege sufficient facts for fraud.
Four elements must be proven to establish a fraudulent misrepresentations: (1) a false representation was made as a statement of fact, (2) the statement was untrue and known to be so when made, (3) the statement was made with the intent of inducing reliance thereon, and (4) the other party relied on the statement to his detriment. Billington v. Billington, 220 Conn. 212, 217,595 A.2d 1377 (1991). "[A] promise to do an act in the future when coupled with a present intent not to fulfill the promise is a false representation." Pavia v. Vanech Heights Construction Co., 159 Conn. 512, 515, 271 A.2d 69
(1970).
"[C]ourts exercising equitable jurisdiction broadened the legal conception of fraud as an affirmative misrepresentation to include more subtle guises, such as nondisclosure." Pacelli Brothers Transportation, Inc. v. Pacelli, 189 Conn. 401, 410, 456 A.2d 325 (1983). "Fraud indeed, as known to equity jurisprudence, `properly includes all acts, omissions and concealments by which an undue and unconscientious advantage is taken of another.'" Id. (Citations omitted.) "The intentional withholding of information for the purpose of inducing action has been regarded . . . as equivalent to a fraudulent misrepresentation." Id., 407. (Citations omitted.) "To constitute a fraud by nondisclosure or suppression, `there must be a failure to disclose known facts . . . a request or an occasion or a circumstance which imposes a duty to speak.'" (Citations omitted.) Wedig v. Brinster, 1 Conn. App. 123, 130, 469 A.2d 783 (1983).
In count two plaintiffs conclude that defendants CNB and Scharfenberger made misrepresentations of material facts or failed to disclose material facts concerning the loan transactions to induce plaintiffs to enter into the loan agreements. Specifically, plaintiffs allege that: (1) "Scharfenberger did not disclose that the bank would follow any different disbursement procedure.", (2) "Because of conversations with the CT Page 1957 defendant Scharfenberger and CNB's handling of the McAuley project, the plaintiffs were induced to believe and did believe that neither the $200,000 loan nor the $500,000 loan would be funded until they had reviewed an offering memorandum for the South Windsor project, and made a final decision to invest. They also understood that when they consented to invest, the proceeds from the loans would be placed in a Bank escrow account pending a sell-out of the offering memorandum subscriptions.", (3) "Neither the defendant CNB not the defendant Scharfenberger disclosed to the plaintiffs that CNB would disburse the loan proceeds without the plaintiffs' knowledge or consent.", and (4) "At no time did the plaintiffs receive an offering memorandum for the South Windsor property. At no time did they make a final decision to invest. At no time did they authorize the defendant CNB or the defendant Scharfenberger to distribute the proceeds of either the $500,000 or the $200,000 note to anyone." (Plaintiffs' Third Amended Complaint, Count Two, paras. 15, 21-22, 24).
We find that the plaintiffs allege sufficient facts in count two of false statements and failure to disclose facts to survive defendants' motion to strike count two.
Count Three — Recission
Defendants argue that the court should strike count three in that it fails to allege a cognizable cause of action.
Plaintiffs argue in opposition that they are pleading recission as an alternative ground for relief.
Practice Book 131 requires that the complaint "contain a concise statement of the facts constituting the cause of action, and, on a separate page of the complaint, a demand for relief which shall be a statement of the remedy or remedies sought." The claim for relief must always be at the end of the complaint. Goodrich v. Stanton, 71 Conn. 418, 425, 42 A. 74 (1899). Recission and damages are alternative remedies in a fraud action. Pacelli, supra, 409; Kavarco v. T.J.E., Inc., 2 Conn. App. 294,298-99, 478 A.2d 257 (1984). CT Page 1958
Recission is not a cognizable cause of action and absent the claims for relief in counts two and three, the allegations of these counts are identical. Accordingly, the court grants defendants' motion to strike count three. The claims for relief should be set forth at the end of the complaint.
Count Four — Negligent Misrepresentation
Defendants argue that the court should strike count four in that plaintiffs fail to allege the necessary elements of negligent misrepresentation. Negligent misrepresentation is defined as follows:
 One who in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 217-18, 520 A.2d 217 (1987). (Emphasis added.)
We conclude that based on the allegations set forth in the discussion of count two which are incorporated into count four, the plaintiffs have sufficiently alleged that the defendants supplied plaintiffs with false business information to allege an action for negligent misrepresentation in count four.
Count Five — Recission
Defendants move to strike count five in that "recission" is not a cognizable cause of action.
The court strikes count five for the same reasons set forth in the discussion on count three: (1) recission is a claim for relief, not a cause of action, and (2) CT Page 1959 absent the claims for relief, counts four and five are identical.
Count Six — Negligence
Defendants argue that the court should strike count six in that defendants did not owe plaintiffs a duty of care with respect to the subject transaction.
"Negligence is a breach of duty." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 171,544 A.2d 1185 (1988). To sustain a cause of action the court must determine whether a duty was owed which is a question of law, and whether that duty was violated, which is a question of fact. Id.
In count six the plaintiffs allege that the defendants owed plaintiffs a duty of care with respect to the dispersal of loan proceeds and that defendants breached that duty by negligently disbursing the proceeds to persons other than the plaintiffs without plaintiffs' knowledge or consent.
We find that the plaintiffs have alleged sufficient facts going to a duty and breach thereof in count six to survive defendants' motion to strike.
Count Seven — CUTPA
Defendants argue that the court should strike count seven in that CUTPA does not apply to the subject transaction.
Plaintiffs argue that Banks are not exempt from CUTPA.
There is a split of authority at the superior court level as to whether CUTPA applies to banks. The majority of decisions hold that CUTPA does apply to banks. See People's Bank v. Smulley, 7 CSCR 1323, 1324
(November 18, 1992, Leheny, J.); Riverbridge Associates Ltd. Partnership v. Chase Manhattan Bank of Connecticut,7 CSCR 1126, 1129 (September 8, 1992, Melville, J.); Connecticut National Bank v. Alliance Petroleum Industries, Inc., 6 Conn. L. Rptr. 529, 531 (July 6, CT Page 1960 1992, Hennessey, J.); Faitella v. North Atlantic Planning Corp., 7 CSCR 136 (January 6, 1992, Byrne, J.); Connecticut National Bank v. Ridgely Brown, 7 CSCr 191, 192 (December 12, 1991, Mottolese, J.); Connecticut National Bank v. Anderson, 5 Conn. L. Rptr. No. 3, 60, 62 (October 1, 1991, Pickett, J.); Elward v. Bank of Boston Connecticut, 6 CSCR 783 (August 6, 1991, Burns, J.); Economic Development v. Cititrust, 3 CTLR 517 (April 15, 1991, Dranginis, J.); Andrus v. North American Bank,3 Conn. L. Rptr. 434 (April 3, 1991, Fuller, J.); Westledge Real Estate, Inc. v. Suffield Bank, 3 CTLR 217 (February 11, 1991, Clark, J.); Bristol Savings Bank v. Szydlowski, 3 CTLR 146 (January 28, 1991) O'Connor, J.); Ebersol 
McCormick v. Torrington Savings Bank, 4 CSCR 499, 500
(May 26, 1989, Pickett, J.); Andrews v. Connecticut National Bank Trust Co., 1 CSCR 795 (September 22, 1986, Sullivan, J.); Weisman v. Westport Bank Trust,1 CSCR 283 (April 30, 1986, Zoarski, J.). But see People's Bank v. Mandel, 7 CSCR 1242 (October 31, 1992, Stodolink, J.); Bridgeport v. Fleet Bank, 7 CSCR 27, 27-28 (July 27, 1992, Hadden, J.); Andrus v. Maloney, 7 CSCR 74 (December 6, 1991, Maiocco, J.); Everrest, Inc. v. Advest, 4 Conn. L. Reptr. 423 (August 12, 1991, Wagner J.); The Washington Trust Co. v. Alland Associates, 3 Conn. L. Reptr. 447 (April 9, 1991, Leuba, J.).
Several of the superior court cases hold that "[t]he issue of whether CUTPA applies to banks ultimately depends upon the type of transaction activities in which the bank is allegedly engaged. When a bank is engaged in consumer-oriented activities, CUTPA should apply." Economic Development Associates, supra, 520. See also Alliance Petroleum Industries, Inc., supra, 531; Ridgely Brown, supra, 192.
Plaintiffs allege in count seven that they had a fiduciary relationship with defendants CNB and Schrafenberger. Plaintiffs further allege that they were banking customers of CNB since at least 1982 and that in 1985 and 1989 Schrafenberger acted as the plaintiffs' personal banker in two loan transactions. Plaintiffs further allege that, inter alia, the defendants made misrepresentations, failed to disclose important information and failed to act consistently in handling plaintiffs' loan transactions. Plaintiffs further allege CT Page 1961 that as a result of defendants' actions plaintiffs suffered financial loss.
We conclude that the plaintiffs have sufficiently alleged a consumer-oriented transaction and unfair practice to survive defendants' motion to strike count seven.
Count Eight — CUTPA
Defendants argue that the court should strike count eight of the plaintiffs' complaint in that the statutes cited by plaintiffs do not confer standing for a private right of action.
Plaintiffs argue that the defendants' violation of the cited statutes constitute CUTPA, courts must consider:
 (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)] . . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent, it meets all three.
Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80,105-06, 612 A.2d 1130 (1992).
Plaintiffs allege in count eight that the defendants "procured a false acknowledgement and falsely-dated documents as part of a scheme to defraud the plaintiffs. The defendants used the United States CT Page 1962 mail in furtherance of this scheme to defraud. The defendants recorded and falsely acknowledged and dated documents." Plaintiffs further allege that these actions constitute "an abuse of recordation and violations of18 U.S.C. § 1341, and Section 53-368 of the General Statutes."
The plaintiffs are not alleging private causes of action under the aforementioned statutes; plaintiffs are alleging a CUTPA claim under the first prong of the test for determining whether a practice is unfair and deceptive. We find that plaintiffs have sufficiently alleged a CUTPA cause of action in count eight and therefore the court denies the defendants' motion to strike this count.
Count Nine — Breach of Contract
Defendants argue that the court should strike count nine in that the plaintiffs have failed to allege that there was mutual assent between the parties as to the disbursement procedure.
Plaintiffs argue in opposition that count nine sufficiently alleges facts going to contract and the breach thereof.
 A contract is an agreement between parties whereby one of them acquires a right to an act by the other; and the other assumes an obligation to perform that act. The obligation assumed is called a promise. Contracts may be express or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in light of the subject matter and of the surrounding circumstances, then the contract is an implied one (Citations omitted.). . . . Whether this contract is styled "express" or "implied" involves "no difference in legal effect, but lies merely in the mode of CT Page 1963 manifesting assent." (Citations omitted.)
Boland v. Catalano, 202 Conn. 333 336-37, 521 A.2d 142
(1987).
In count nine plaintiffs allege that the plaintiffs and defendants agreed that "CNB would disburse the loan proceeds only with the knowledge and consent of the plaintiffs and according to the procedures used for the McAuley financing. The defendant CNB breached that agreement by disbursing the loan proceeds without the knowledge and consent of the plaintiffs . . . [and] by failing to follow the procedures used for the McAuley financing."
We find that the plaintiffs have alleged sufficient facts going to either an express or an implied contract in count nine to survive the motion to strike count nine.
Count Ten — Breach of Covenant of Good Faith Fair Dealing
Defendants argue that the court should strike count ten of plaintiffs' complaint in that no duty of good faith is owed in an arm's length transaction.
Plaintiffs argue in opposition that they have alleged the necessary elements for a claim of breach of a covenant of good faith and fair dealing.
An implied covenant of good faith and fair dealing arising out of a contractual relationship has been explicitly recognized in Connecticut. See Magnan v. Anaconda Ind, 193 Conn. 558, 566, 479 A.2d 781 (1984). The claim has also been allowed in a lender-borrower relationship. See Connecticut National Bank v. Anderson,6 CSCR 943 (October 1, 1991, Pickett, J.); Economic Development Associates v. Cititrust, 6 CSCR 400 (March 27, 1991, Dranginis, J.); Sorvillo v. Strother,2 CSCR 1095 (October 1, 1987, Leuba, J.). "Under the UCC definition `good faith' is a subjective standard. It involves a determination of the intent or state of mind of the party concerned, taking into account the actual knowledge of the person as well as his or her motives." Phillipe v. Thomas, 3 Conn. App. 174, 175, 489 A.2d 1056
CT Page 1964 (1985).
In count ten plaintiffs allege that defendants breached their duty of good faith and fair dealing in the following respects:
 (a) by failing to communicate with the plaintiffs concerning each step of the loan transactions;
 (b) by falsifying the loan documents concerning the $500,000 loan;
 (c) by funding the loans and accruing interest without the plaintiffs' knowledge or consent;
 (d) by disbursing the plaintiffs' funds to Mr. Cronen and Roncalli without the plaintiffs' knowledge or consent;
 (e) by failing to establish an escrow account for disbursement of the plaintiffs' funds;
 (f) by using the plaintiffs' funds to favor the defendant Roncalli, another Bank customer;
 (g) by using the plaintiffs' funds for CNB's own benefit to satisfy loan obligations of the defendant Roncalli;
 (h) by seizing the plaintiffs' U.S. Treasury Note and misusing the proceeds;
 (i) by violating or procuring the violation of CNB's internal operating policies;
 (j) by instituting proceedings to collect on the $500,000 loan.
Plaintiffs' Third Amended Complaint, Count Ten, para. 45. CT Page 1965
We find that the plaintiffs have sufficiently alleged breach of a covenant of good faith and fair dealing to survive defendants' motion to strike count ten.
Count Eleven — CUTPA
Defendants argue that the court should strike count eleven in that plaintiffs do not have standing to raise a private cause of action under General Statutes 36-242A et seq., the Creditor Collection Practices Act (CCPA). Defendants argue specifically that plaintiffs' debt is not a "consumers debt" as required by the CCPA.
Plaintiffs argue in opposition that they have alleged a valid CUTPA claim based on violations of the CCPA.
In count eleven of the complaint plaintiffs allege that defendant CNB is a creditor under the CCPA and violated the CCPA
 (a) by collecting and attempting to collect debts when the proceeds had been disbursed without the knowledge or consent of the plaintiffs,
 (b) by using unfair or unconscionable means to collect the debts.
(Plaintiffs' Complaint, Count Eleven, paras. 44, 45).
Plaintiffs have failed to allege a consumer transaction, which is a necessary requirement for a violation of the CCPA. See General Statutes 36-243a, 36-243b. Accordingly, the court strikes count eleven of plaintiffs' third amended complaint.
Count Twelve — Conversion
Defendants argue that the court should strike count twelve of the complaint in that plaintiffs have failed to sufficiently allege the elements of a conversion. CT Page 1966
Plaintiffs argue in opposition that they have alleged the necessary facts for a conversion claim.
"Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights." Luciani v. Stop Shop Co., 15 Conn. App. 407, 409, 544 A.2d 1238 (1988). "[T]here are two `general classes' of conversion: (1) that in which the possession of the allegedly converted goods is wrongful from the onset; and (2) that in which the conversion arises subsequent to an initial rightful possession." Id., citing Coleman v. Frances, 102 Conn. 612,615, 129 A. 718 (1925). If possession, originally rightful, becomes wrongful by reason thereafter of a wrongful detention, there can be no conversion until the possessor refuses to deliver the property on demand. Luciani, supra, 410.
Plaintiffs allege in count twelve that defendant CNB assumed and exercised dominion and control over plaintiffs' funds, to the exclusion of the plaintiffs' rights in using plaintiffs' loan proceeds, to pay itself the interest obligations of another customer.
We find that the plaintiffs have sufficiently alleged a conversion in count twelve to survive defendants' motion to strike.
Count Thirteen — Conversion
Defendants argue that the court should strike count thirteen in that plaintiffs have failed to allege facts sufficient for a conversion claim.
Plaintiffs argue in opposition that they have sufficiently alleged an action for conversion.
In count thirteen plaintiffs allege defendant CNB seized and disposed of plaintiffs U.S. Treasury Note that was worth approximately $269,205.00 without the plaintiffs' authorization in that:
 (a) its security interest in the U.S. Treasury Note was unenforceable under CT Page 1967 General Statutes Section 42a-9-203
because no value was given; and
 (b) the proceeds of the U.S. Treasury Note were used in part to satisfy a debt that was not secured by the Treasury Note.
Plaintiffs' Third Amended Complaint, Count thirteen, para. 44. Specifically plaintiffs allege that the Treasury Note was seized and used to pay off a disputed obligation in that: (1) the plaintiffs did not receive the loan proceeds and (2) the obligation was not secured by the Treasury Note. See Plaintiffs' Third Amended Complaint, Count thirteen, paras. 29, 34-36, 40-42.
The plaintiffs have sufficiently alleged a CUTPA claim based upon an alleged violation of the CCPA. See Cheshire Mortgage, supra, 105-06 (setting forth the requirements for an unfair trade practice.). Accordingly defendants' motion to strike count thirteen is denied.
Count Fourteen — Conversion
Defendant Roncalli argues that the court should strike count fourteen for failure to allege conversion in that: (1) plaintiffs allege that they did not want the money, (2) Roncalli had no intent to convert the money in that it did not know the source of the money, (3) Roncalli was authorized under an option agreement to the money, and (4) the allegations of this count are inconsistent with the allegations against defendant CNB.
Plaintiffs argue in opposition that they have argued sufficient facts.
In count fourteen plaintiffs allege that defendant Roncalli assumed possession of money belonging to plaintiffs and retained possession over the money even though it became aware on or about December 27, 1990 that the possession was not rightful.
We conclude that the count has sufficiently alleged facts of a conversion to survive the motion to CT Page 1968 strike. Contrary to Roncalli's arguments in its motion, plaintiffs do not allege in count fourteen that they did not want the money. Furthermore, Roncalli's introduction of the option agreement into the pleadings amounts to a speaking motion to strike and therefore the court may not consider that fact. See Liljedahl Bros., Inc. supra, 248. Lastly, the plaintiffs are entitled to plead in the alternative in separate counts. See Practice Book 137; Hanover Insurance Co. v. Fireman's Fund Insurance Co.,217 Conn. 340, 346, 586 A.2d 567 (1991). Accordingly, the court denies defendant Roncalli's motion to strike count fourteen.
Count Fifteen — Unjust Enrichment
Defendant Roncalli argues that the court should strike count fifteen of the complaint in that: (1) Roncalli had no knowledge of the benefit, and (2) the sums paid to Roncalli did not exceed the fair value of the benefit conferred.
Plaintiffs argue in opposition that they have sufficiently alleged a claim for unjust enrichment.
 "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. (Citation omitted.) In order for the plaintiff to recover under the doctrine, it must be shown that the defendants were benefited, that the benefit was unjust in that it was not paid for by the defendants, and that the failure of payment operated to the detriment of the plaintiff. Monarch Accounting Supplies, Inc. v. Prezioso, 170 Conn. 659, 665-66, 368 A.2d 6 (1976); Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242, 246, 287 A.2d 379 (1971)."
Burns v. Koellmer, 11 Conn. App. 375, 383, 527 A.2d 1210
(1987). "[U]njust enrichment has been the form of action commonly pursued in this jurisdiction when the benefit that the enriched party receives is either money or property." Id., 384. (Citations omitted.) CT Page 1969
 "This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated . . . . The question is: Did he, [the party liable] to the detriment of someone else, obtain something of value to which he was not entitled?" (Citations omitted.)
Id.
In count fifteen plaintiffs allege that defendant Roncalli "was benefited by the proceeds of the plaintiffs' loans which were paid to it or to CNB to satisfy its loan obligations . . . . Defendant Roncalli did not pay or otherwise compensate the plaintiffs for the benefit of receiving the proceeds of the plaintiffs' loans." (Plaintiffs' Third Amended Complaint, Count Fifteen, paras. 40 and 42)
We find that the plaintiffs have alleged sufficient facts in count fifteen to survive Roncalli's motion to strike.
Mary R. Hennessey, J.