NANCI L. BURNS *v.* WILLIAM E. KOELLMER ET AL.
(4732)

DUPONT, C. J., BORDEN and DALY, Js.

376

Argued March 3—decision released June 30, 1987

*Jules Lang,* with whom, on the brief, was *Beverly M. Krieger,* for the appellant (defendant).

*Matthew B. Woods,* with whom, on the brief, was *Louis I. Gladstone,* for the appellee (plaintiff).

DUPONT, C. J. This appeal is brought by the named defendant[1] from a judgment rendered in favor of the plaintiff, after a jury trial. The defendant claims that the trial court erred in denying his motion for a directed verdict, in charging the jury on theories of implied contract, unjust enrichment and quantum meruit, and in failing to submit interrogatories to the jury. We find no error.

The relevant facts which could reasonably have been found by the jury are as follows. The defendant oper-

---

[1] The named defendant was the sole shareholder in a corporation which operated a tennis club. The other defendant is the corporation. As used in this decision, the word defendant refers to the named defendant.

ated a tennis club. The plaintiff, who played tennis at the club, began a social relationship with him. At times, she would help him at the club by answering the telephone and performing other light tasks. As their relationship developed, the parties began to live together in a condominium near the club. The plaintiff then began, at the request of the defendant, to perform all of the managerial functions at the club. Shortly thereafter, the plaintiff divorced her husband, while the defendant remained married to his estranged wife. The plaintiff worked for a period of six years as the manager of the club, during which time the defendant remunerated her with some payments by cash and check. The plaintiff expected to be remunerated in excess of those payments, the defendant benefited from the plaintiff's service, the defendant had assured the plaintiff that she would receive additional compensation, and the plaintiff's expectation of payment ceased when her employment did. After those six years as manager, the plaintiff was discharged and the parties' personal relationship came to an end.

The first and second counts of the plaintiff's complaint as amended, contain nearly identical allegations. One count is against the individual defendant and the other against the corporation club.[2] According to the allegations, the defendant requested that the plaintiff assume the managerial duties of the club; the plaintiff undertook those duties with the expectation of payment for her services; the defendant knew of that expectation and accepted the services rendered; the defend-

[2] The complaint was amended several times, once in response to the defendant's objection to a previous amendment. That objection asserted that the plaintiff had failed to respond to the defendant's request to revise to allege in separate counts the specific claims against each defendant. This objection led the plaintiff to separate the first count into two separate counts, one against the individual, and one against the corporate defendant. Both counts contain essentially identical factual allegations. The defendant did not thereafter request any further revision of the complaint.

ant remunerated her from time to time as partial payment for her services; the defendant represented that she would be fully compensated in the future; and the defendant terminated her as manager without having fully compensated her for the services which she performed as manager.

The defendant answered the complaint, admitting that he knew the work was being done by the plaintiff, admitting making payments to her, but denying that they were partial payments for her services, and admitting that she was terminated as manager. The defendant asserted special defenses of the statute of frauds, the statute of limitations, and a public policy against adultery, as barring the plaintiff from any recovery. The jury returned a general verdict for the plaintiff.

The trial court filed a memorandum of decision upon its denial of the defendant's motion to set aside the verdict.[3] The court reviewed some of the facts which the jury could reasonably have found, and also discussed its charge in response to the defendant's objection to it. The court gave no charge on the special defense of the statute of limitations because it ruled that the plaintiff's cause of action arose when her expectation of remuneration was defeated by her replacement as manager of the tennis club and, therefore, that the statute of limitations did not begin to run until that time. Since the complaint in both counts one and two alleged the

---

[3] The trial court was not required by Practice Book § 322 to file a memorandum of decision explaining its denial of the motion to set aside the verdict, but followed the commendable practice of filing the memorandum to assist this court in reviewing the denial on appeal. See *Lancaster* v. *Bank of New York,* 147 Conn. 566, 573, 164 A.2d 392 (1960). Practice Book § 322 states: "When the court *grants* a motion to set a verdict aside, it shall file a memorandum stating the grounds of its decision." (Emphasis added.)

The defendant's motion to set aside the verdict was made on the grounds that it was contrary to law, against the evidence, excessive, and that the court's instructions to the jury were erroneous.

facts necessary to prove the necessary elements of a recovery on the principles of restitution, the court stated that it was proper to give a charge on quantum meruit, unjust enrichment, and implied contract. Finally, the court held that the defendant's request for interrogatories was properly denied because they related solely to the plaintiff's cause of action for breach of an express contract, and could not have protected the defendant from a general verdict.

The defendant claims that any agreement which might have existed between the parties should not be enforced because it is contrary to the public policy of this state. The public policy he relies upon is that the state will not condone a relationship which has the effect of destroying a marriage. The defendant seeks to buttress his argument by relying upon the cases of *Tator* v. *Valden,* 124 Conn. 96, 198 A. 169 (1938), and *Beit* v. *Beit,* 135 Conn. 195, 63 A.2d 161 (1948), as well as the criminal proscription against adultery. General Statutes § 53a-81. The cases upon which he relies did not directly involve any allegedly adulterous relationship, but are instructive of the general principles which militate against enforcing contracts which are contrary to public policy.

"A court will not grant any relief to a plaintiff who rests his claim upon an agreement which is against public policy, for that would be to lend its aid to an illegal transaction. *Smith* v. *David B. Crockett Co.,* 85 Conn. 282, 287, 82 A. 569 [1912]; *Roberts* v. *Criss,* 266 F. 296, 301 [1920]; 2 Page, Contracts (2d Ed.) § 1026." *Beit* v. *Beit,* supra, 198. The defendant seeks to avoid any obligation he may have incurred by relying upon the premise that whatever agreement the parties entered into was part and parcel of their adulterous cohabitation.[4]

---

[4] This proscription against the enforceability of contracts which are contrary to public policy is likewise applicable to a remedy which does not

In this case, the alleged contract was not made for or about the parties' living arrangements or sexual behavior. The agreement of the parties as pleaded and proved did not involve prohibited acts. The plaintiff's claim for restitution rests upon neither an illegal agreement nor an agreement the object of which is illegal. The recognition of her claim cannot lend any aid to an illegal transaction. Claims of a contractual or quasi-contractual nature between parties in illicit relationships but which do not involve payment for prohibited sexual behavior are enforceable in courts of law. "A bargain between two persons is not made illegal by the mere fact of an illicit relationship between them, so long as that relationship constitutes no part of the consideration bargained for and no promise in the bargain is conditional upon it."[5] 6A, A. Corbin, Contracts § 1476 (1962). " 'The courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services. . . . In the absence of an express contract, the courts should inquire into

require that the agreement of the parties be an enforceable contract. "Courts generally do not grant restitution under agreements that are unenforceable on grounds of public policy." E. Farnsworth, Contracts (1982) § 5.9, citing *Couglar* v. *Fackler,* 510 S.W.2d 16 (Ky. App. 1974); see also 2 Restatement (Second), Contracts § 197.

[5] A review of the evidence fails to reveal any support for the proposition that the agreement of the parties involved, in any way, meretricious sexual conduct. The trial court's memorandum, which recognized that the parties were romantically involved, cannot reasonably be read to even imply such a finding. As the trial court stated: "The Jury could reasonably have found that, Bilkoe, a Connecticut Corporation, and Koellmer (sole stockholder) individually benefitted from the labor and services provided to them by the plaintiff who became romantically involved with the defendant Koellmer. . . . There was no specific agreement as to the amount she would receive in the future. It was a promise made by a romantically involved party, in this case Koellmer, to his companion who was working constantly to make one of his businesses successful. When their relationship ended the promises for future payment or an expectation of same also ended. In fact the defendant Koellmer counterclaimed for gifts made to the plaintiff which the jury denied."

the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case.' " *Boland* v. *Catalano,* 202 Conn. 333, 340–41, 521 A.2d 142 (1987), quoting *Marvin* v. *Marvin,* 18 Cal. 3d 660, 665, 134 Cal. Rptr. 815, 557 P.2d 106 (1976). Thus, a contract, express or implied, or some other tacit understanding between persons who are not married to one another which does not rely upon their sexual behavior is enforceable in the courts of this state. See 2 Restatement (Second), Contracts §§ 197–98.

The defendant next argues, in support of his claim of error in the denial of his motion for a directed verdict, that the alleged oral contract was unenforceable because of its vagueness and because it was prohibited by the statute of frauds, General Statutes § 52-550.[6] The defendant also argues that the plaintiff pleaded a cause of action in express contract only, thereby prohibiting the jury from finding the defendant liable on theories of quantum meruit, unjust enrichment and implied contract. He thus raises the corollary argument that the trial court erred by charging the jury on those theories of recovery.

Of these claims, we first address the argument that the trial court erred in charging the jury on theories of restitution. If this claim fails, then the statute of frauds defense falls with it. The defendant asserts that counts one and two of the complaint allege an express

---

[6] General Statutes § 52-550 provides in pertinent part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (5) upon any agreement that is not to be performed within one year from the making thereof."

contract and that the plaintiff is, therefore, precluded from recovery on a restitutionary theory. The pleadings of the plaintiff's complaint must be examined to determine whether she alleged these theories. See, e.g., *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.*, 153 Conn. 19, 22–23, 213 A.2d 449 (1965); Practice Book § 322.

The defendant hinges his claim that the complaint alleges only a theory of express contract on the complaint's allegation that the defendant represented to the plaintiff "that she would be fully compensated for her work, labor and services at a subsequent time from assets of [the defendant]." The defendant argues that this allegation limits the plaintiff's cause of action to one sounding in express contract.

The allegations of the complaint must be given " 'such reasonable construction as will give effect to [it] in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties.* ' " (Emphasis in original.) *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985).

The first and second counts of the complaint both consist of fourteen paragraphs. Paragraphs seven and twelve of each count allege, respectively, that the defendant requested that the plaintiff assume the managerial duties at the tennis club, and that she accepted partial payment for her services upon his representation that she would be fully compensated in the future. Other paragraphs of the complaint allege that she expected payment for her services, that the defendant knew of her services and of her expectation for payment, and that she was never paid in full for her services.

"The burden rests on the plaintiff to allege a recognizable cause of action in her complaint. *Stavnezer* v.

*Sage-Allen & Co.,* 146 Conn. 460, 461, 152 A.2d 312 [1959]." *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* supra, 22. The trial court, in concluding that the plaintiff had alleged a quasi-contractual theory of recovery, relied upon *A & C Corporation* v. *Pernaselci,* 2 Conn. App. 264, 477 A.2d 166 (1984). "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479. In order for the plaintiff to recover under the doctrine, it must be shown that the defendants were benefited, that the benefit was unjust in that it was not paid for by the defendants, and that the failure of payment operated to the detriment of the plaintiff. *Monarch Accounting Supplies, Inc.* v. *Prezioso,* 170 Conn. 659, 665–66, 368 A.2d 6 (1976); *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971)." *A & C Corporation* v. *Pernaselci,* supra, 265. The plaintiff's allegations were sufficient to state a cause of action for unjust enrichment.

The trial court also charged the jury on the theory of quantum meruit. The question is whether her complaint alleges facts sufficient for such recovery. Both unjust enrichment and quantum meruit are doctrines allowing recovery on the theory of restitution, that is, the restoration to a party of something of which he was deprived because of the unjust enrichment of another at his expense. See G. Palmer, 1 Restitution (1978) § 1.1. Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. *Rossetti* v. *New Britain,* 163 Conn. 283, 292, 303 A.2d 714 (1972). Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered. The pleadings must allege facts to support the theory that the defendant, by knowingly

accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered. *Derr* v. *Moody,* 5 Conn. Cir. Ct. 718, 721–22, 261 A.2d 290 (1969). If the allegations do support the theory, then the plaintiff was entitled to the charge on quantum meruit for the recovery of the value of the services rendered. *Rossetti* v. *New Britain,* supra, 292.

The theory of restitution as a basis for recovery encompasses both unjust enrichment and quantum meruit as the terms have been used in Connecticut cases. Broadly speaking, the availability of restitution is dependent upon unjust enrichment, that is, upon a perceived injustice because one party has benefited at the expense of another. In a narrower sense, unjust enrichment has been the form of action commonly pursued in this jurisdiction when the benefit that the enriched party receives is either money or property. See *Monarch Accounting Supplies, Inc.* v. *Prezioso,* supra; *Providence Electric Co.* v. *Sutton Place, Inc.,* supra; *Franks* v. *Lockwood,* 146 Conn. 273, 150 A.2d 215 (1959). "This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did he, [the party liable] to the detriment of someone else, obtain something of value to which he was not entitled?" (Citations omitted.) *Franks* v. *Lockwood,* supra, 278. Quantum meruit, by comparison, is the form of action which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution. See *Rossetti* v. *New Britain,* supra; *Anderson* v. *Zweigbaum,* 150 Conn. 478, 191 A.2d 133 (1963); *Rowell* v. *Ross,* 87 Conn. 157, 87 A. 355 (1913); *Schempp* v. *Beardsley,* 83 Conn. 34, 75 A. 141 (1910); *Clark* v. *Terry,* 25 Conn. 395 (1856).

Unjust enrichment and quantum meruit are forms of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. See 5 S. Williston, Contracts (3d Ed. 1970) § 1479; Restatement, Restitution §§ 40, 41, 107. The trial court found, and we agree, that the plaintiff's pleadings alleged facts sufficient to support restitution. The court did not err in so charging the jury. The facts which could reasonably have been found by the jury, based upon the evidence, are sufficient to uphold the plaintiff's verdict.[7]

It may once have been true that a plaintiff could not assert two theories of recovery in the same action. Such a situation, however, was due to the distinct common law pleadings of debt and assumpsit, out of which the

---

[7] The trial court, in upholding the verdict of the jury, stated, with respect to the charge on restitution: "At all times the defendants were aware of the theory relied upon by the plaintiff. The defendants now claim after the verdict that the plaintiff's complaint was only an express agreement to pay for something in the future. The defendants claim that they relied upon the complaint as one in express agreement. . . . The defendants knew before and during trial that the court was relying upon the theory of unjust enrichment, and implied contract.

"The defendants did not make any motions to separate the two theories relied upon by the plaintiff's complaint. The language of the complaint included the theory of quantum meruit and implied contract."

A review of the trial court's decision on a motion to set aside a verdict is guided by the rule that " ' "great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." ' " (Citations omitted.) *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 (1954). Further, just as we will not review this case on a theory which it was not tried upon, so we will not, upon review, ignore the clear determination of the trial court as to what theory it was tried upon. See *L.F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.,* 9 Conn. App. 30, 35 n.4, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). The defendant has not presented us with any convincing argument that the case was not, in fact, tried by both parties on a theory of restitution, and our review of the record reveals that the trial court did not abuse its discretion in denying the motion to set aside the verdict for that reason. *Ardoline* v. *Keegan,* supra, 555.

theory of restitution has sprung. Compare *Comes* v. *Lamson,* 16 Conn. 246 (1844), with *Clark* v. *Terry,* supra; see G. Palmer, Restitution (1978) § 1.2. That system of pleadings has been abolished in this jurisdiction, which now requires the pleading of facts. Practice Book § 108.[8] The fact-based pleadings now in use can support in a single action previously incompatible theories, and there is no requirement that the plaintiff plead the legal effect of those facts. Practice Book §§ 109, 110.[9] Generally, if two theories are alleged in the same pleading, it is for the trier of fact to determine whether the plaintiff has proved both, neither, or but one of them.

The pleadings invoke the equitable principles necessary to support the court's charge, and render unnecessary our review of the defendant's claims of error regarding vagueness and the statute of frauds. That review is rendered unnecessary because the verdict can be upheld on quasi-contractual grounds. Even if the defendant were correct in his assumption that the plaintiff used a single count to allege the facts necessary to sustain both contractual and quasi-contractual theories of recovery, such a use is not necessarily

---

[8] Practice Book § 108 provides: "FACT PLEADING. Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved, such statement to be divided into paragraphs numbered consecutively, each containing as nearly as may be a separate allegation. If any such pleading does not fully disclose the ground of claim or defense, the court may order a fuller and more particular statement; and, if in the opinion of the court the pleadings do not sufficiently define the issues in dispute, it may direct the parties to prepare other issues, and such issues shall, if the parties differ, be settled by the court."

[9] Practice Book § 109 provides in pertinent part: "PLEADING LEGAL EFFECT. Acts and contracts may be stated according to their legal effect, but in so doing the pleading should be such as fairly to apprise the adverse party of the state of facts which it is intended to prove."

Practice Book § 110 provides: "IMPLIED DUTY. It is unnecessary to allege any promise or duty which the law implies from the facts pleaded."

improper, as the claims of the plaintiff all arise out of the same transactions. See Practice Book § 133.[10] If the defendant had wished to distinguish more particularly the theories invoked by the pleadings, his recourse was a request to revise the pleadings. Practice Book § 147;[11] see 1 E. Stephenson, Conn. Civ. Proc. § 78 (Covello Sup., 1982). In this case the defendant did utilize the request to revise during the course of the pleadings. The plaintiff responded to that request for a separation of the claims against each defendant. The amended complaint did not, however, allege in separate counts, as to either defendant, any particular legal basis for recovery. If the defendant was not satisfied with the state of the pleadings, he could have filed further requests for revision.

The factual allegations in the pleading support the plaintiff's recovery on a restitutionary theory. "We have uniformly approved the use of a single count to set forth the basis of a plaintiff's claims for relief where they grow out of a single occurrence or transaction or closely related occurrences or transactions, and it does not matter that the claims for relief do not have the same legal basis. It is only when causes of action, that is, the groups of facts upon which the plaintiff bases his claims for relief, are separate and distinct that separate counts are necessary or indeed ordinarily desirable. *Purdy* v. *Watts,* 91 Conn. 214, 216, 99 A. 496

[10] Practice Book § 133 provides in pertinent part, as follows: "In any civil action the plaintiff may include in his complaint both legal and equitable rights and causes of action, and demand both legal and equitable remedies . . . ."

[11] Practice Book § 147 provides in pertinent part: "Whenever any party desires to obtain (1) a more complete or particular statement of the allegations of an adverse party's pleading, or . . . (3) separation of causes of action which may be united in one complaint when they are improperly combined in one count, . . . the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading."

[1916]." *Veits* v. *Hartford,* 134 Conn. 428, 438–39, 58 A.2d 389 (1948); Practice Book § 138.[12]

The defendant claims that the allegation that the defendant represented that the plaintiff would be fully compensated at a later date was an allegation of an express contract. The complaint in this case did not allege an express contract. An express contract is one in which the terms of the contract are expressed by the direct words of the parties. *Hale* v. *Fred Benvenuti, Inc.,* 38 Conn. Sup. 634, 638–39, 458 A.2d 694 (1983). Such is not the case here. We agree with the conclusion of the trial court that neither count one nor count two of the plaintiff's complaint alleged an express contract. The trial court also stated in its memorandum of decision that the defendants were aware throughout the trial that the plaintiff was not relying on an express contract of the parties. The denial of the directed verdict on the ground of unenforceability of contract and the failure to charge on the statute of frauds are of no consequence, because the plaintiff alleged and proved quasi-contractual remedies.

The defendant also claims error as to the denial of his motion to set aside the verdict because the statute of limitations; operate to bar the assertion of an action in contract on the facts of this case. See General Statutes §§ 52-576, 52-596. This claim could not succeed even if the plaintiff's pleadings were solely in express contract. The plaintiff's cause of action did not arise in this case until the defendant breached the agreement by refusing to fully compensate the plaintiff for her services. See *Anderson* v. *Zweigbaum,* supra, 481;

[12] Practice Book § 138 provides: "Where separate and distinct causes of action, as distinguished from separate and distinct claims for relief founded on the same cause of action or transaction, are joined, the statement of the second shall be prefaced by the words Second Count, and so on for the others; and the several paragraphs of each count shall be numbered separately beginning in each count with the number one."

*Schempp* v. *Beardsley,* supra, 37–38. The defendant did so refuse to fully compensate her in September of 1981, and she commenced this action in that same month. The statute of limitations, thus, is no bar to her recovery.

The defendant also claims that the trial court erred in failing to submit his requested interrogatories to the jury.[13] In order to save himself from the general verdict rule, a party may request interrogatories in order to establish the legal basis of the verdict. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 527, 457 A.2d 656 (1983); *Goodman* v. *Metallic Ladder Mfg. Corporation,* 181 Conn. 62, 65, 434 A.2d 324 (1980), Practice Book § 312. Such interrogatories are ordinarily submitted at the discretion of the trial court, but the incorporation of two causes of action into a single count confers upon the defendant the right to have properly drawn interrogatories submitted to the jury. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* supra, 527; *Hartford* v. *Anderson Fairoaks, Inc.,* 7 Conn. App. 591, 594, 510 A.2d 200 (1986). In this case, however, contrary to the assertions of the defendant, two causes of action were not incorporated in one count.

The defendant's proposed interrogations are all premised on his erroneous belief that the plaintiff's complaint and theory of recovery are based upon an express contract. We have rejected that interpretation of the complaint. The court did not, therefore, err in declining to submit the interrogatories to the jury.

There is no error.

In this opinion the other judges concurred.

[13] Two of the defendant's seven interrogatories related to a third count of the plaintiff's complaint. There was a defendant's verdict as to this count, and, therefore, these two interrogatories are not involved in the defendant's claim of error.