[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Southern Connecticut Gas Company, filed a ten count amended complaint against the defendants, Park Town Associates Limited Partnership (Park Town), United Realty Management, Inc. (United Realty); Rasamny Realty Management Corporation (Rasamny Realty); and Colonial Manor Condominium Association (CMCA). The plaintiff alleges that it provided gas service to the Colonial Manor Condominiums during the period between January 31, 1989, to May 9, 1989, which was billed to various Park Town accounts. The plaintiff alleges that the defendants have failed to pay the balances on those accounts. The plaintiff alleges that the total amount owed is $24,660.60 plus interest.
Counts one through six of the complaint are directed toward Park Town, United Realty and Rasamny Realty. Those counts are based on contractual claims. Counts seven through nine are directed toward CMCA. In count seven, the plaintiff alleges that it would be inequitable to allow CMCA to accept gas service without paying for the service. In count eight, the plaintiff alleges that CMCA is liable for the gas service pursuant to General Statutes § 16-262e.[1] In count nine, the plaintiff alleges that CMCA's refusal to pay for the gas service constitutes a violation of Connecticut's Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b.[2] Count ten is directed toward Park Town, United Realty and Rasamny Realty and is based on General Statutes § 16-262e.
CMCA filed an answer and special defense. CMCA alleges in its special defense that the gas bills were sent to Park Town and CMCA never agreed to pay the bills. CMCA also filed a one count cross complaint against Park Town, United Realty and Rasamny Realty. CMCA alleges that the public offering statement did not CT Page 196 include all of the expenses that were to be common expenses as required by General Statutes § 47-264(a)(6). The plaintiff alleges also that Park Town never gave notice to CMCA that it expected reimbursement of maintenance and cleaning costs.
The plaintiff responded to CMCA's special defense, admitting that the bills were sent to Park Town and that CMCA never had an express agreement with the plaintiff to pay for the gas services. The plaintiff denied that CMCA never assumed liability for the gas service provided to its buildings.
The action was tried before an attorney trial referee. The referee filed his report, findings, and recommendations on March 30, 1994. He made numerous findings of fact, among them the following: (1) on February 19, 1987, Park Town declared certain property in Milford, Connecticut to be Colonial Manor Condominium and the Declaration of Condominium was recorded in the Milford Land Records on April 21, 1987; (2) the Declaration of Condominium provides that "[n]atural gas is . . . provided by Southern Connecticut Gas Company, the charge for which will be a common expense shared equally by unit owners without regard to actual usage; (4) in June, 1989, Park Town notified the plaintiff that it should bill CMCA for the gas service; (5) there is currently an unpaid balance of $24,660.60 on the account for service provided from January 31, 1989, to May 9, 1989; (6) the Declaration of Condominium relieved Park Town of its obligation to pay for gas service; (7) CMCA was obligated to pay for gas service as of April, 1987; (8) the gas service rendered benefitted [benefited] CMCA; and (9) CMCA is responsible for the gas service pursuant to General Statutes § 16-262e(c).
Based on these findings of fact, the referee made the following recommendations: (1) the plaintiff did not satisfy its burden of proof against Park Town, United Realty, and Rasamny Realty and, therefore, judgment should be entered in favor of those defendants; (2) there is no evidence of unfair trade practices and judgment should be entered for the defendants on that claim; (3) the plaintiff has sustained its burden of proof against CMCA and judgment should be entered against CMCA in the amount of $24,660.60; (4) no interest should be allowed prior to the date of judgment since the underlying action was a result of a bona fide dispute; (5) CMCA did not satisfy its burden of proof in regard to its cross claim against Park Town, United Realty, and Rasamny Realty; and (6) the plaintiff should be awarded statutory costs. CT Page 197
On April 13, 1994, CMCA requested a twenty day extension in which to file a motion to correct. On June 1, 1994, the attorney trial referee filed his decision on CMCA's motion to correct. On June 6, 1994, CMCA filed a motion for exceptions to the referee's report. On June 10, 1994, CMCA filed its objection to the acceptance of the report. On July 1, 1994, the plaintiff filed its motion for judgment on the referee's report.
"The attorney trial referee sits only as a fact finder."National Elevator Industry Pension, Welfare Educational Fundsv. Scrivani, 31 Conn. App. 728, 733, 626 A.2d 1322 (1993), reversed on other grounds, 229 Conn. 817, 644 A.2d 327 (1994). "[T]he trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." Dills v. Enfield, 210 Conn. 705, 713,557 A.2d 517 (1989).
"An objection is addressed to the referee's legal conclusions, while an exception challenges its findings of fact."Martino v. GM Excavating, Inc., Superior Court, judicial district of Ansonia-Milford, No. 034924 (February 3, 1993, Jones, J.). The trial court does not have authority to retry the case, and may "not find additional facts or reject others `unless a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear.'"Dills v. Enfield, supra, 210 Conn. 714, quoting Practice Book § 439. The trial court also may "not consider an exception unless its subject matter has been submitted to the [attorney trial referee] in a motion to correct. . . ." Practice Book § 439.
The trial court's task is to determine whether the conclusions of fact and law by the referee "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book § 440. "[A] referee's determinations of law in his or her report are not binding on the court." Dills v. Enfield, supra, 210 Conn. 713.
CMCA moves the court for numerous exceptions to the attorney trial referee's findings of fact. The exceptions are directed primarily to the findings that relate to whether Park Town made payments on the accounts, whether any payments were made during the period in question, and which party had the obligation to pay for gas service. CT Page 198
 I.
CMCA moves for an exception and also filed an objection to the introduction of the public offering statement into evidence. CMCA objected to the introduction of the document during trial on the ground that it was irrelevant. "Trial courts have broad discretion in determining the relevancy of evidence"; Hoadley v.University of Hartford, 176 Conn. 669, 672, 410 A.2d 472 (1979); especially in a trial to the court. Rarely is the judgment in such a case overturned based on a claim that evidence admitted was irrelevant.
Such is the case here. Any error in admitting the public offering statement into evidence was harmless. The facts found that were based on the public offering statement are not material to the referee's conclusion that CMCA is liable for the gas service under a theory of quantum meruit.
Quantum meruit is an "equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." Burns v. Koellmer, 11 Conn. App. 375, 384,527 A.2d 1210 (1987). "Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . . Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered. The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to [it] that [it] would be compensated in the future, impliedly promised to pay [it] for the services [it] rendered." (Citation omitted.) Id., 383-84. "Quantum meruit . . . is the form of action which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution." Id., 384.
In the present case, the attorney trial referee found that "the claim against [CMCA] . . . is based upon a benefit conferred upon the members of the association under circumstances which would give rise to a presumption that such benefits were to be paid for." The referee also found that "[i]t is undisputed that no Defendant has paid the Plaintiff for service rendered from January 31, 1989, through May 2, 1989, although it is clear that such CT Page 199 service was, indeed, rendered and did benefit the Condominium Association members and unit owners." Based on these findings of fact, the referee concluded that CMCA was liable to the plaintiff for $24,660.60.
The attorney trial referee's findings are supported by the trial testimony and the findings support his conclusion of law that CMCA is liable to the plaintiff under a theory of quantum meruit.
 II.
The plaintiff also alleged that CMCA was liable for the gas service pursuant to General Statutes § 16-262e(c). Section16-262e(c) provides in part that "[t]he owner, agent, lessor or manager of a residential dwelling shall be liable for the costs of all electricity, gas, water or heating fuel furnished by a public service company, municipal utility or heating fuel dealer to the building on an individually metered or billed basis for the exclusive use of the occupants of that dwelling unit."
In the findings of fact, the attorney trial referee states that CMCA "is responsible for such [gas] charges by reason of the application of Connecticut General Statutes § 16-262e(c)." CMCA filed an exception to this finding on the ground that no evidence was introduced to show that Colonial Manor Condominium is a residential dwelling under General Statutes § 16-262e. The Declaration of Condominium provides that "[e]ach Unit is restricted to use only for residential purposes. . . ." Therefore, the referee's finding was supported by the evidence.
 III.
Finally, the attorney trial referee found that "[n]o evidence was produced at trial which would be sufficient to sustain the special defenses and cross complaint of the various Defendants." CMCA moves for an exception to this ruling on the ground that since the court had previously sustained the plaintiff's objection to the cross complaint, CMCA believed that no evidence could be introduced at trial on the cross complaint. The court file does not reflect that the plaintiff's objection to the cross complaint was sustained. "This case must be decided on the record. State v.Gilnite, 202 Conn. 369, 379, 521 A.2d 547 (1987). The record presented is devoid of a ruling" sustaining the plaintiff's objection to the cross complaint. Augeri v. Planning ZoningCT Page 200Commission, 24 Conn. App. 172, 179, 586 A.2d 635, cert. denied,218 Conn. 904, 588 A.2d 1383 (1991). Since there is no evidence in the record to support CMCA's claims, the referee's finding is proper.
The attorney trial referee's findings of fact and conclusions are supported by the evidence and judgment is entered in accordance with the referee's report.
BY THE COURT
Bruce L. Levin Judge of the Superior Court