[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION FACTS
In July of 1995, the plaintiff contracted with the defendant for the construction of a new two car garage on premises she owned at 257 Bassett Street in New Haven.
Under the contract, the defendant also agreed to demolish an existing garage and to pour a new cement foundation.
The plaintiff said the defendant paid $10,337.28 for this construction, the specified in the written contract.
The plaintiff began to experience difficulty in using the garage, and in particular with the double overhead door which in very short order became inoperable.
When the city's building department got involved, the defendant attempted to correct some of the deficiencies, but the garage door remains inoperable. Experts were offered by both parties and the plaintiffs expert listed serious deficiencies which he claimed render the garage useless in its present condition,
The plaintiff's complaint is in four counts: breach of contract, unjust enrichment, infliction of emotional distress, and CUTPA violations.
 DISCUSSION I
The defendant's position with respect to the breach of contract claim is somewhat puzzling. The defendant's expert Siegman Knebl, conceded that the garage is not usable at present and cited some of the same deficiencies as testified to by the plaintiffs expert, Clarence Phillips, the city's building inspector, a licensed architect.
With respect to the overhead door, Mr.Knebl said he was "not involved in the function of the door and its attachment." Mr. Phillips, on the other hand, stated the headers and anchors were not adequate to lift and drop the door. Herman Sachse, principal of the defendant corporation, testified that he repaired the overhead door on three occasions. He attributed the repeated pulling loose of the bolts holding the door supports to vandalism,
Mr. Phillips found the structure to be unsound and unsafe. He noted, and photo exhibits depict, frame and roof sagging. He was particularly critical of the headers spanning the sixteen foot entrance way and supporting an oversized garage door. Mr. Knebl agreed that these headers are undersized, but stated that the sagging roof and garage door "do not effect the structural integrity" of the garage.
However, the most significant feature of Mr. Knebl's testimony was that this structure, as it stands now, was not in compliancewith the building code! He also found that the roof pitch was 4" to 12", and not the 6" to 12" called for in the contract. This could affect its capacity to shed water from melting snow and ice.
It is the conclusion of the Court that the plaintiff has proved the contract was breached in significant areas and that the plaintiff should prevail on this, the second count.
 II
The plaintiffs unjust enrichment claim contained in the third count must be rejected.
 "Unjust enrichment and quantum meruit are forms of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. See 5 S. Williston, Contracts (3d Ed. 1970) § 1479; Restatement, Restitution §§ 40, 41, 107."
Burns v. Koellmer, 11 Conn. App. 375, 385 (1987).
 III
The plaintiffs fourth count, claiming intentional infliction of emotional distress must also fail.
First, there was no trial testimony establishing such distress was suffered by the plaintiff and that it was caused by the actions of the defendant.
Thus, the plaintiff cannot establish the four elements required by Supreme Court decisions. In addition to the above, the plaintiff must show the intent of the defendant to inflict the distress, or show that it knew or should have known that the actions would cause the distress. And, that the conduct complained of was extreme and outrageous. (Citations omitted).
 IV
The plaintiffs first count seeks damages for violation of the Connecticut Unfair Trade Practices Act (CUTPA).
The defendant argues that this claim arises out of a single isolated instance, a breach of contract and is distinguishable from unfair acts or practices.
The Court does not see this as a single isolated episode. This plaintiff paid for a new garage and has been unable to use it for over four years. The defendant has completely ignored a major problem — the overhead door and offers the explanation that the door supports were not popping off but were the product of vandalism. After three such "occurrences," the door is inoperable and the Court heard testimony from an expert as to the cause of the problem — deficient supports and anchors.
As the structure was viewed by the defendant's expert, it was not constructed in accordance with the building code and even he admitted the headers present a serious problem. He suggested other remedial work was needed.
The repairs which the defendant purported to perform, and then only after intercession by the city, were done in an amateurish fashion. The roof lacks the slope called for in the contract and sags noticeably. There are signs of water leakage in what was a new structure.
There is more one could relate, but the Court's perception of this situation is that of a sloppily constructed inadequate structure which the defendant then chose to delay addressing when so advised. This behavior is rife with elements of delay and deception, witness the "vandalism" explanation, and reflects a calculated indifference to the consumer.
The Court finds that the defendant by its original action and subsequent delays and deception has injured this consumer in a manner CUTPA was designed to address.
The plaintiff has proven her claim under CUTPA in the first count and the Court will hear the parties post judgment to consider an award of counsel fees.
 V
The defendant has argued at trial and in its brief that the plaintiff has failed in its proof as to damages.
There is no dispute over the amount called for in the contract and there is no question over the payment by the plaintiff to the defendant, $10,337.28. (The plaintiff also seeks to recover her finance costs, but the Court does not find this to be an element of damages).
The defendant has breached his contract with the plaintiff as she did not receive what she bargained for — a new garage constructed in a workmanlike manner and according to code.
While the defendant argues the required repairs are "minor," he has opposed the plaintiffs attempt to introduce repair estimates from a proposed plaintiffs witness and from its own expert.
This leaves the Court with the opinion of the city building inspector that the present structure could be condemned as unsafe and the opinion of the defendant's own expert that the structure is not up to code, but can be repaired.
In the face of the plaintiffs proof, the defendant has not offered true rebuttal. The Court does not find the defendant's position to be sound. It cannot concede the breach of contract and then claim the plaintiff is not entitled to total restitution on the grounds that the building can be repaired. Even this result leaves the plaintiff with the potential cost of demolition of the structure in question, but no evidence was offered as to that item.
The Court concludes the plaintiff is entitled to recover her total payment of $10,337.28. The plaintiff is also entitled to interest on that sum which should run from March 5, 1998 to the date of judgment. This date gives the defendant the benefit of the doubt as to the date on which he actually received notice of the plaintiffs demand, and after the remedial work he assumed closed the matter out.
Therefore judgment may enter as follows:
Damages $10,337.28
Interest March 5, 1998 to April 5, 2000 2,153.60
Total $12,490.88
Anthony V. DeMayo, Judge Trial Referee
CT Page 4555