[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Seeking damages and other relief, plaintiff brings this action in eight counts including one sounding in quantum meruit. CT Page 6360
In a one day trial to the court, the plaintiff, his wife and the defendant, Ali Alibigi were heard as witnesses. (Hereinafter Ali Alibigi will be referred to as the defendant, although his wife Lili Alibigi is also a named defendant in this action).
From a preponderance of the credible evidence, the following facts are found:
Plaintiff, a jack-of-all-trades, carpenter and builder and defendant, a real estate broker, had been acquaintances for a number of years, having met while working togther in a manufacture's quality control department where they discussed and contemplated opportunities to earn money in real estate. Toward that end and sometime prior to the transaction in question, as joint venturers, they acquired, maintained and operated a rental property in Waterbury, Connecticut. Additionally, and on occasion, plaintiff did some carpentry work and provided handyman services on other projects in which defendant was involved.
On December 9, 1988, the defendant acquired an unimproved lot on Governors Hill Road in Oxford, Connecticut. This parcel, identified in deeds as Lot #4 is also known as 144 Governors Hill Road. On August 30, 1990, plaintiff and defendant entered into a written joint venture agreement. The express purpose of their agreement was to construct a single family residence on Lot #4, obtain a certificate of occupancy and then list and ultimately sell it on the open market. The proceeds of sale were to be divided equally between them after each received credits or priority payments pursuant to the agreement. In accordance with the agreement, defendant provided the land and it was plaintiff's responsibility to build the house and pay all costs of construction. After construction commenced, the parties, in writing, modified and increased the scope of the work. At the same time plaintiff was building at 144 Governors Hill Rd., he was also building his own home at 177 Governors Hill Road in Oxford.
Plaintiff soon ran out of funds with which to build the house at 144 Governors Hill Road, consequently, on May 1, 1991, the joint venture agreement was further modified. Pursuant to that written modification, the defendant conveyed a one-half interest in Lot #4 to the plaintiff who was then to secure a construction mortgage that would provide funds for the completion of the house. This addendum further provided that upon the sale of the premises, the proceeds would be disbursed as follows:
A) $95,000 to the defendant
B) payment of the construction loan up to $120,000.00, and CT Page 6361
C) the balance to be divided equally between plaintiff and defendant.
As anticipated, on July 22, 1991, the parties secured a mortgage in the principal sum of $100,000.00, the sole purpose of which was to construct the house at 144 Governors Hill Road. The plaintiff, it was later learned, received approximately $95,000.00 of the mortgage proceeds and, without defendant's authority or approval, retained them for himself.
On July 31, 1991, the plaintiff and defendant again amended and further modified their August 30, 1990 Joint Venture Agreement. Under the terms of this written amendment, the plaintiff and defendant agreed that the "costs of making extra living area by extending the sides and adding rooms over the garage, and the attick, (sic) shall not be limited by the contract and will be divided equally between Alek and Ali upon estimate made by calculations of extra expenses paid by Alek."
This modification as well as all prior modification and addenda to the original joint venture agreement were made in writing, in accord with the terms of that agreement which in pertinent part provides that,
 "any oral agreement shall not be binding upon the parties and therefore any deviations from this agreement by either party shall be considered a breach of this agreement, if not in writing, and each party shall have twenty (20) days to correct the breach or they shall have forfeited their rights under this agreement."
On July 17, 1992, unable to perform his duties under the joint venture agreement, as modified and amended, the plaintiff conveyed to the defendant, by quit claim deed, his interests in the subject property.
From and after that date, defendant assumed sole responsibility for the payment of the first mortgage. He also finished building the house at an additional cost to him of approximately $60,000.00.
The Town of Oxford issued a Certificate of Occupancy on or about July 15, 1993. Thereafter defendant listed the property for sale but was unable to sell same. Approximately one year after receipt of the Certificate of Occupancy, defendant and his family took up residence at 144 Governors Hill road where they continue to reside at the present time.
On or about March 8, 1994, the plaintiff was involved in divorce litigation with his wife, at the time, Rachela Kleszczewski. The CT Page 6362 defendant was impleaded as a third party in that action to respond to claims by plaintiff's wife that plaintiff had an ownership and/or financial interest in the 144 Governors Hill Road property. As evidence of a final resolution of those claims, on June 8, 1995, the plaintiff executed a general release in favor of the defendant while plaintiff's wife released her lis pendens that had encumbered title to the property.
Subsequently, in a financial affidavit filed with the family court, plaintiff claimed an interest in his personal residence at 178 Governors Hill Road in Oxford but claimed no interest in the 144 Governors Hill Road property.
On March 15, 1995, the plaintiff filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code wherein he listed his sole asset as real property known as 38 Taylor Street in Waterbury. However, he did list under Schedule D, Creditor's Holding Secured Claims, the mortgage, on the subject premises, in favor of Shelton Savings Bank. As a result of plaintiff's filing, defendant was informed that the mortgagee had the authority to accelerate the mortgage loan. Consequently, defendant remortgaged elsewhere and with those proceeds satisfied the Shelton Savings Bank mortgage. Further, to placate his mother-in-law, from whom he borrowed money to complete the house at 144 Governors Hill Road, defendant transferred his interest in same to his wife the defendant, Lili Alibigi.
Interestingly, even after these trying circumstances, plaintiff continued to work for defendant on other projects, for which plaintiff insisted on being paid in cash. This was not an unusual method of compensating plaintiff, although, during their relationship plaintiff had also received, by way of compensation from defendant, the rent-free use and occupation of an apartment for approximately two years.
In light of all of the foregoing, defendant claims that plaintiff has no legal or equitable interest in the 144 Governors Hill Rd. property and that he has been paid for all of his work on same.
Plaintiff, however, contends that on an indeterminate date, while at defendant's diner in Orange, Connecticut, where he repaired or installed some ventilating equipment, the defendant induced him to agree to construct an "in-law" apartment in the attic of the Governors Hill Road property. This the defendant accomplished by stating to plaintiff and his present wife that upon completion of the improvements, he would thereafter list the property for sale and upon the sale, would divide the proceeds between them as provided for in the 1990 joint Venture Agreement, as amended. The plaintiff claims that, in reliance, he completed the improvements at a substantial cost to himself in terms of construction CT Page 6363 materials and labor and now seeks to have the property sold and the proceeds divided.
While defendant argues that plaintiff did finish several attic rooms at 144 Governors Hill Road, he claims that plaintiff was paid in cash for his labors.
The facts as found by this court clearly indicates that plaintiff was no "babe in the woods" when it came to real estate matters. He was aware that defendant was not going to agree to an oral contract requiring that he build, sell and divide the proceeds of sale in consideration of the completion of several attic rooms, and his testimony and that of his second wife, to the contrary, do not persuade the court differently.
The court is of the opinion that both plaintiff and defendant are not above playing fast and loose with facts and rules. An example of their disregard is evidenced by the fact that neither party obtained a building permit for the attic rooms, although both knew one was required. Further, according to defendant's selective recall, plaintiff did little but paint the attic rooms and install some wall board, when in point of fact, plaintiff did the necessary framing, insulating, sheetrock installation, taping and painting. Additionally, although not licensed in the mechanical trades, as is required, plaintiff, with defendant's approval, extended and installed the necessary plumbing and plumbing fixtures to construct a new bathroom, installed a hot water heating system, electrical lighting and electrical convenience outlets in the attic. Again, neither plaintiff nor defendant are above violating rules, regulations or the law if it serves their purpose.
In any event, the court finds that plaintiff spent $2,810.47 for materials and rendered services having a value of $6,918.53, for a total of $9,729.00 in constructing the attic "in-law" apartment at 144 Governors Hill Road. Contrary to the plaintiff's request, however, the court does not find a valid and enforceable oral contract that would require defendant to sell the subject property and divide the proceeds in accordance with the original joint venture agreement.
Alternatively, plaintiff seeks an award of $96,967.21 claiming that defendant has been unjustly enriched by that amount. Clearly, there has been unjust enrichment because the court does not believe that defendant paid plaintiff for the construction of the attic rooms. The benefit bestowed on the defendant, however, is not in the amount sought by plaintiff.
Acknowledging receipt of the sum of $95,000.00 that he appropriated from the construction mortgage, plaintiff's demand reflects a reduction CT Page 6364 by that sum and he maintains that the amount sought is evidenced by hundreds of canceled checks, invoices and receipts that are in evidence. Upon inspection, it is found that many of the plaintiff's checks were made payable to cash and lack endorsement although they were negotiated. Similarly, many of the bills and invoices were directed to plaintiff's residence at 178 Governors Hill Road or to some address in Waterbury so that it is not possible to determine from them where the materials were delivered or the services rendered. Consequently, the court is left with plaintiff's self serving written summaries as the principal evidence of the cost of construction materials, supplies and labor used to build the house at 144 Governors Hill Road and such evidence does not satisfy plaintiff's burden of proof.
The only sum found due and owing by the defendants to the plaintiff, by a fair preponderance of the evidence is $9,729.00 for materials and labor in connection with the construction of the attic rooms.
Undoubtedly the defendants have benefited at the expense of the plaintiff. His skill and services have provided them with additional rooms including a bathroom, at their residence and therefore the court finds that an implied contract exists for the value of plaintiff's services and the cost of construction.
 "Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered." (Citation omitted.) Burns v. Koellmer, 11 Conn. App. 375, 383, 527 A.2d 1210
(1987)
In accord with the foregoing, the court finds the issues for the defendants on all counts of plaintiff's complaint with the exception of Count Seven (Quantum Meruit as to defendants, Ali Alibigi and Lili Alibigi), and judgment will so enter.
As to Count Seven of plaintiff's complaint, judgment will enter in favor of the plaintiff and against the defendants Ali Alibigi and Lili Alibigi and it is adjudged that the plaintiff recover of said defendants the sum of $9,729.00 and costs of suit.
 _____________________ THOMAS G. WEST, JUDGE
CT Page 6365