[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
In this case, the plaintiff has sued his former employer, Mystic Liquor, and its owner, Richard Hayward, pursuant to § 31-72 of the General Statutes on the grounds that he was a so-called "non-exempt" employee whom the defendants were obligated to pay on an hourly basis and to pay overtime. The complaint alleges that the plaintiff began working for the defendants in June of 1996 at $60,000 per year for a forty-hour week. His hours were then increased to 70 hours from June, 1996 to June, 1997. He then worked 60 hours per week from July, 1997 to January, 2000 and 50 hours from January, 2000 to October, 2000. The plaintiff alleges further that he received no overtime in this span of time; he got the same flat salary no matter how many hours he worked over 40 hours. The final paragraph of the complaint states that "the plaintiff made demand for payment of overtime which demand was refused or neglected" and this allegation is made in the context of an earlier paragraph which claims that "at all relevant times Mr. Hayward was the person who set the plaintiffs hours, establishing schedules and responsibilities."
The defendants have filed a motion for summary judgment claiming that under § 52-596, the applicable statute of limitations, the plaintiffs suit is barred. That statute provides that no action for overtime "shall be brought but within two years after the right of action accrues." The individual defendant, Mr. Hayward, makes another argument regarding the action as it applies to him personally. He cites the case of Butler v.Hartford Technical Inst., Inc., 243 Conn. 454 (1997), for the proposition § 31-72 liability may be extended to an individual "only under very narrow circumstances." Butler is quoted from to the effect that under § 31-72 an individual as well as a corporation can be held liable "if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation," id. p. 464. CT Page 12710
The court will now attempt to deal with these arguments and would observe that under summary judgment practice, such a motion should be granted if there is no material issue of fact preventing the motion from being granted so that parties are not put through the expense and burden of meritless litigation. On the other hand, the court cannot decide a genuine issue of fact between the parties on the way to granting such a motion, since that would deprive the plaintiff of its constitutional right to a jury trial.
 (1)
The court will first discuss Mr. Hayward's claim that whether or not the plaintiff was a nonexempt employee and thus entitled to bring a claim under § 31-72, Mr. Hayward "was not the ultimate responsible authority with respect to setting the plaintiffs hours of employment." Mr. Hayward has submitted an affidavit in which he states the plaintiff was hired as the manager of the liquor store in June, 1996. At all times, "He set his own hours and made his own schedule." Hayward denies playing any role in setting the plaintiffs hours. In fact, he and his wife were "absentee owners" of the store; the plaintiff submitted his own time sheets and he was paid on a weekly basis.
The plaintiff has submitted a counter affidavit which concedes that he was hired as a manager but asserts that over the years his responsibilities as a manager were reduced. He states that starting in late 1998 he raised the issue that his managerial responsibilities had been reduced and that he should be either paid overtime or his managerial responsibilities should be restored. The affidavit goes on to say "in the summer of 1999," all managerial responsibility had been removed from the plaintiff and "at that point" he asked the property manager and bookkeeper of the business to speak to Mr. Hayward about the overtime issue. He claims they said they would speak to him, but through the summer and fall of 1999, they reported Hayward was busy, would get back to him and/or was thinking about the request for overtime. By the summer of 1999, the plaintiff said he had no authority to set schedules of employees or his own schedule; Hayward `controlled all aspects of' the liquor store. When anything arose about running the store, the manager and bookkeeper said they would have to consult with Hayward, it was his decision. Hayward, for example, approved his request for vacation and even had to approve a request for four hours off from work.
What must be kept in mind in analyzing the issue of whether individual liability can be imposed for an alleged violation of § 31-72 is that the issue of whether a claimant is an exempt employee because he or she has managerial responsibilities is a separate question from the issue of CT Page 12711 whether, if in fact an employee is nonexempt a particular individual officer of a business can face liability on the basis that officer set hours and wages and therefore might have denied a right to overtime pay. Factually, the two issues can be seen to be related quite clearly where a small corporation is involved, a single manager is all that is required to run the business, and the primary corporate officer by his or her very act of assuming managerial control changes an employee's status from an exempt manager to a non-exempt wage earner thus exposing him or herself to individual liability. In this context, managerial control by its very nature would involve the ability to set hours and wages and the officer of a small corporation by exerting that control would necessarily be the cause of any wage violation.
Giving the affidavit of the plaintiff its most favorable reading, that is what the plaintiff asserts here. He claims he had no authority to set his own schedule at least by the summer of 1999. His query about overtime wages had to be determined by Hayward according to the company's bookkeeper and property manager who were Hayward's "representatives." If, in fact, the plaintiff had lost his manager status by the summer of 1999 and was, at least by that date, a non-exempt employee, and Hayward, as the plaintiffs affidavit indicates, had the final say on whether he would receive overtime pay, then Mr. Hayward's refusal to authorize overtime pay was "the specific cause of the wage violation," Butler, id., p. 462.
 (2)
The court will now discuss the statute of limitations issue. The defendants note that the plaintiff alleges he began working for Mystic Liquor on June 2, 1996, and made demand for overtime which was "refused or neglected." However, suit was not brought until May 23, 2001.
The applicable statute of limitations is § 52-596. Under that statute, suit must be brought within two years from the date that a cause of action accrues. A cause of action in a claim such as this has been held to accrue when the employee's request for overtime pay is denied. InBurns v. Koellmer, 11 Conn. App. 375, 388 (1987), the court said; "the plaintiffs cause of action did not arise . . . until the defendant breached the agreement by refusing to fully compensate the plaintiff for her services." In Warzecha v. Nutmeg Companies, Inc., 48 F. Sup.2d 151,158 (D. Conn., 1999), the district court interpreted § 52-596 by relying on Burns and said: "A cause of action for payment of remuneration for employment accrues where an employer refuses to compensate an employee. CT Page 12712
The posture of the legal issues before the court is somewhat confusing at least to the court. The amended complaint can be read as making a claim of being denied overtime pay from some time in June, 1996, when the plaintiff was first hired to when he left employment in October, 2000. The final paragraph of the complaint alleges that the plaintiffs demand for such pay was refused or neglected.
Two problems are presented. For one thing, the plaintiffs affidavit is somewhat confusing since although it catalogues a gradual loss of managerial responsibility, it seems to suggest that those responsibilities were not taken away at least until late 1998 — the first point then at which a right to overtime pay could be said to have arisen. The parties did not directly address this issue, however, since the defendants flatly deny the plaintiff lost any managerial responsibilities and did not choose to dissect the plaintiffs affidavit in the manner suggested.
But turning directly to the statute of limitations issue, the plaintiffs affidavit says the overtime issue was raised with representatives of Hayward in late 1998, but the plaintiff "had no opportunity to raise this issue directly with Skip Hayward." Even assuming the plaintiffs status was such that he could demand overtime from late 1998 on, it is difficult to see how the plaintiff can avoid the bar of the statute, at least as to a portion of his claim when he did not directly raise the claim with Hayward and just in a conclusory way states he had no chance to do so — all the while receiving paychecks which did not include the amount of overtime he now says he was entitled to receive. Besides in that period did he merely "raise the issue" or make a demand for overtime pay? An actual demand must be required or the limitations statute would be rendered inoperative. An employee could make a claim for overtime after leaving employment in a situation where he never demanded it while working but just raised the issue and thus never got a refusal — the statute would run from the last date of employment on the theory that the employee had certainly not received overtime by that date.
As to statutory claims after the summer of 1999, which is well within the two-year limitations period, the substantive claim seems clearer. The plaintiffs affidavit says by then "all managerial responsibility had been removed from (him)." From that point, he asked the Hayward representatives about overtime and was told Hayward was "busy," "would get back to him" and more significantly, "was thinking about the request."
At no time was he told by these representatives Hayward refused to CT Page 12713 authorize overtime. Section 31-72 is an ameliorative statute meant to protect workers who are often unorganized and in a weak bargaining position. The affidavit seems to indicate an explicit demand was made for overtime and the allegation is made that it was communicated to Mr. Hayward. (See para. 9 of plaintiff's affidavit.) The bar of the statute should not be permitted to come down so as to rule out a claim where the allegation of the employee's affidavit permits the inference that the employee was being strung along, for want of a more elegant phrase. Under such circumstances, the fact that during this time period the plaintiff was accepting a paycheck is not controlling. In Burns v. Koellmer, supra, itself the plaintiff had received some compensation but "expected to be remunerated in excess of those payments," 11 Conn. App. at p. 377. Besides, at p. 388, the court said: "The plaintiff's cause of action did not arise in this case until the defendant breached the agreement by refusing to fully compensate the plaintiff for her services," (emphasis by this court). Here, if the allegations of the plaintiff in his complaint and affidavit are accepted as true, the obligation to pay overtime are read into the employment contract by operation of statutory law.
In any event, although a portion of the plaintiffs claims may be barred by the limitations statute or by a simple failure to establish a right to overtime as a non-exempt employee the court cannot conclude that as to all the claims made, therefore, the motion for summary judgment is denied.
Corradino, J. CT Page 12714