GAYNOR ELECTRIC COMPANY, INC. v.
JAMES HOLLANDER
(10903)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 28, 1992—decision released January 5, 1993

*Anthony M. Fitzgerald,* with whom was *William F. Holland,* for the appellant (defendant).

*Frank J. Szilagyi,* for the appellee (plaintiff).

LAVERY, J. The defendant appeals from the trial court's judgment in favor of the plaintiff on the defendant's counterclaim for incidental damages. The defendant asks that we reverse the judgment of the trial court because (1) the trial court incorrectly determined that certain contractual terms added by the plaintiff to the backs of its invoices were incorporated into the contract between the parties by virtue of the Uniform Commercial Code (UCC), and (2) the trial court incorrectly ruled that the added terms barred the defendant from recovering incidental damages. Because the added terms of the contract did not, as a matter of law, bar the defendant from seeking incidental damages, we need not reach the merits of the defendant's first claim. We reverse the judgment of the trial court and remand the case for a new trial on the issue of incidental damages.

The trial court found the following facts. The plaintiff, a Connecticut corporation that manufactures electromagnetic switches, and the defendant, who makes heated handlebar grips for snowmobiles, began a business relationship in 1986, when the plaintiff agreed to supply the defendant with a large quantity of switches in 1987. Thereafter, agreements were reached for supplying switches to the defendant for 1988 and 1989 as well.

In July, 1989, the defendant discovered a defect that caused a large number of the switches to jam and therefore to become unusable in its product. After being notified of the problem and inspecting the switches, the plaintiff requested that the defendant return all of the switches in its inventory. Between August and November of 1989, the defendant packed up and shipped 29,000 switches back to the plaintiff. Meanwhile, the plaintiff supplied the defendant with 6000 higher quality switches, and endeavored to repair and replace the returned switches in order to fill the remainder of the defendant's order.

A dispute arose between the parties when the defendant did not pay for additional and previously replaced switches, and the plaintiff brought an action to recover the debt. Just prior to trial, the parties stipulated that judgment would enter in favor of the plaintiff on the indebtedness claim of $17,900.58. The issues remaining before the trial court were those raised by the defendant in a four count counterclaim relating to its claims for incidental damages.

We note that the defendant reiterated at oral argument, in response to questions from the court, that he was seeking only incidental damages on appeal, and, although consequential damages were alleged at trial, there was no attempt to prove them.[1] In its memorandum of decision, the trial court wrote: "It is Hollander's claim that, as a result of the faulty product supplied, he incurred substantial expense in unpacking, repacking, and shipping the 29,000 switches recalled by the plaintiff. Furthermore, he alleges losses of goodwill and market share as a result of the defective switches that reached Hollander's customers, as well as other related

---

[1] The following colloquy occurred during oral argument:

"The Court: You are saying that all the counts in the counterclaim allege damages which would be incidental damages as opposed to consequential?

"Mr. Fitzgerald (counsel to the defendant): Everything . . . which we are claiming on appeal falls into that category.

"The Court: Not everything that was in the complaint originally?

"Mr. Fitzgerald: We had a claim under CUTPA, we claimed punitive damages, we claimed . . .

"The Court: Well, putting aside punitive damages, maybe you could just look at the complaint with me and tell me which is which and which falls into what category . . . let's get to paragraph fourteen, the record page eighteen."

Mr. Fitzgerald called out the letters of the categories from the counterclaim that he deemed were claims for incidental damages, and noted that categories F (loss of sales) and G (loss of good will) were claims for consequential damages. The colloquy continued:

"The Court: F and G have nothing to do with incidental damages?

"Mr. Fitzgerald: No. Nor was . . . there any proof or claim at trial as opposed to in the counterclaim."

expenditures." At oral argument, when discussing this passage, counsel for the defendant noted that the "$15,000 figure," or claim for damages, comes from the expenses of unpacking, repacking, and shipping the 29,000 defective switches, and further said, "We acknowledged in our trial brief below that we had been unable to put any price tag on [the loss of goodwill, market share, and related expenditures]." The record shows, therefore, that the defendant made no attempt to prove, and made no monetary claim for, consequential damages.

The trial court determined that the contract terms on the back of the plaintiff's invoices, barring recovery for consequential damages, did constitute part of the contract between the parties. The defendant argues on appeal that these terms are not part of the contract, and therefore do not limit his remedies. We need not determine whether the trial court correctly ruled that the invoice terms were part of the contract because, even if we assume that the trial court ruled correctly, those terms do not bar the incidental damages that the defendant seeks.

The contractual terms written on the reverse side of the plaintiff's invoices, by their plain language, do not bar the recovery of incidental damages, and in fact allow for their recovery. The section of the invoice entitled "Limitation of Liability," reads: "The liability of the Seller to the Buyer arising out of the manufacture, sale, delivery, use or resale of the goods, whether based on warranty, contract, negligence or otherwise, shall not exceed the cost of correcting defects in the goods as herein provided. Upon the expiration of the warranty period, all such liability shall terminate. The Seller shall not be liable to the Buyer or ultimate users of the equipment into which the goods are incorporated for loss of anticipated profits, loss by reason of plant shutdown or service interruption, nonoperation or

increased expense of operation of other equipment, loss of use of revenue, cost of capital or other consequential loss or damage of any nature arising from any cause whatsoever by reason of the manufacture, sale, delivery, use or resale of the goods covered hereunder." The terms do not mention incidental damages.

The UCC makes a clear distinction between incidental and consequential damages. General Statutes § 42a-2-715,[2] which corresponds to UCC § 2-715, provides that incidental damages include expenses incidental to the seller's breach, while consequential damages includes damages resulting from the seller's breach. "Because consequential damages are defined in a separate subsection, there is no question that these expenses are distinct from consequential damages." *S & R Metals, Inc.* v. *C. Itoh & Co.*, 859 F.2d 814, 818 (9th Cir. 1988). As the official comment to § 2-715 of the UCC notes, incidental damages are intended to "provide reimbursement for the buyer who incurs reasonable expenses in connection with the handling of rightfully rejected goods or goods whose acceptance may be justifiably revoked . . . ." These damages are clearly distinguishable from consequential damages, and therefore "may be recovered even when consequential damages are excluded." *Carbontek Trading Co.* v. *Phibro Energy, Inc.*, 910 F.2d 302, 308 (5th Cir. 1990).

---

[2] General Statutes § 42a-2-715 provides: "(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty."

The plaintiff argues that incidental damages are covered by the language of paragraph six of the invoice terms which states that the seller shall not be liable for "consequential loss or damage of any nature arising from any cause whatsoever by reason of the manufacture, sale, delivery, use or resale of the goods covered hereunder." In its brief, the plaintiff emphasizes the words "or damage of any nature" to claim that the document excludes incidental damages. Both grammatically and contextually, the plaintiff's argument fails upon close examination of the contractual language.

Paragraph six begins by listing several forms of consequential damage: loss of anticipated profits, loss by reason of plant shutdown or service interruption, nonoperation or increased expense of operation of other equipment, loss of use of revenue, and cost of capital. This list is followed by the words "or other consequential loss or damage of any nature . . . ." Therefore, reading the sentence as a whole, it is clear that it refers to consequential damages, the damages listed *and* consequential loss or damage of any kind. The drafter would have excluded incidental damages specifically if that was the purpose of the paragraph in question. The author also would not have bothered to exclude consequential damages specifically if both consequential and incidental damages could be limited by the mere phrase "damage of any nature."

The plaintiff asks us to read the contract in such a way as to ignore common rules of grammar. The adjective "consequential," as used in the phrase "other consequential loss or damage of any nature arising from any cause whatsoever," modifies the nouns "loss" and "damage." The phrase at issue means that the seller is not liable for any *consequential* loss or *consequential* damage.

The contractual terms not only fail to exclude a claim for incidental damages but, as the defendant claims, read in such a way as to allow for their recovery. Specifically, paragraph six states in part: "The liability of the Seller to the Buyer arising out of the manufacture, sale, delivery, use or resale of the goods, whether based on warranty, contract, negligence or otherwise, shall not exceed the cost of correcting defects in the goods as herein provided." The plaintiffs argue that this part of the contract bars a recovery of incidental damages as well because it restricts the seller's liability to "the cost of correcting the defects in the goods." This restriction, the plaintiff asserts, means that it is liable only for the costs of the repair of the 29,000 switches. The expenses borne by the defendant for inspection, packaging, and transporting the goods were, the plaintiffs claim, incident to the recall of the goods and not related to correcting the defects. The facts and circumstances of this case, and the plain meaning of the phrase in question, dictate otherwise.

When the plaintiff became aware of the defect in the switches, it requested that the defendant ship the 29,000 switches back to Gaynor. Since the plaintiff could not repair the switches until they were shipped to its plant, it was incumbent on the defendants to send them. Therefore, the shipping and attendant repacking were clearly part of the "costs of correcting the defect."

As the plaintiff correctly points out, the UCC, in § 2-719 (1) (General Statutes § 42a-2-719 [1])[3] permits

---

[3] General Statutes § 42a-2-719 (1) provides: "Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages, (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."

parties to limit a buyer's remedy for breach. Under § 2-719 (1) (b), however, if such a limited remedy is designed to be exclusive, such as the plaintiff's claim in this case, it must be clearly expressed.[4] See 1 J. White & R. Summers, Uniform Commercial Code (3d Ed.) § 12-9. Here, the contract states that the seller's liability "shall not exceed the cost of correcting defects in the goods." The plaintiff claims that these words create an exclusive remedy limited to the physical repair of the goods. Absent more specific language, we cannot find that these words create the limitation claimed, and, to the contrary, find that in their plain meaning these words include the type of damages sought by the defendant.

" 'In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.' " *Barnard* v. *Barnard,* 214 Conn. 99, 110, 570 A.2d 690 (1990). Normally, a determination of what the parties intended by contractual commitments is "a question of fact, reversible only if the trier of fact could not reasonably have arrived at the conclusion it had reached"; *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 130, 523 A.2d 1266 (1987), affirming 5 Conn. App. 366, 497 A.2d 1049 (1985); but "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Id., 131. "Terms cannot be added to a contract by interpretation." *Con-*

---

[4] UCC comment 2 to General Statutes § 42a-2-719 states: "Subsection (1) (b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed."

*necticut Union of Telephone Workers* v. *Southern New England Telephone Co.,* 148 Conn. 192, 200, 169 A.2d 646 (1961). Applying these principles to the added invoice terms in this case, we conclude that as a matter of law those terms do not bar a claim for incidental damages, and in fact expressly permit such a claim.

The judgment is reversed in part and the case is remanded with direction to render judgment on the counterclaim for the defendant to recover such incidental damages as he may prove on a new trial limited to the issue of incidental damages.

In this opinion the other judges concurred.