[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff filed a revised complaint in six counts, alleging: (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; (4) tortious breach of contract; (5) misrepresentation; and (6) a violation of the Connecticut Unfair Trade Practices Act (CUTPA). Underlying these counts are the following factual allegations:
The plaintiff, Attorney Alan Silver (Silver), represented Allen and Gail Chatt in June, 1988 concerning their claims for damages arising from an automobile accident. Silver worked on the Chatt file for approximately thirteen months before being discharged by his clients who, in July, 1989, requested Attorney Howard Jacobs (Jacobs) to represent their interests.
On July 10, 1989, Jacobs wrote to Silver requesting the Chatt file. Silver wrote back indicating that he would turn over the file as soon as Jacobs complied with Formal Opinion No. 31 of the Connecticut Bar Association. Accordingly, Jacobs provided a written agreement to hold in his "client's funds account the amount required under your contingency agreement until its disposition has been determined by agreement or by litigation." Silver thereafter CT Page 2315 delivered the Chatt file to Jacobs with an offer of full cooperation in assisting with the case.
In December, 1990, Jacobs settled the Chatt case, collecting a fee of $680,000, but did not notify Silver of the settlement. On January 2, 1991, Silver contacted Jacobs after learning of the settlement. Jacobs refused to pay Silver any portion of the fee for legal services and requested evidence of the contingency fee agreement between Silver and the Chatts. Moreover, in the belief that Silver was not entitled to a fee, Jacobs refused to escrow any portion of the fee.
On June 10, 1993, the defendants moved for summary judgment on all six counts of the complaint. On July 13, 1993, the court, Hodgson, J., authorized Silver to attach the defendants' property to the value of $4,000.00 upon a finding that Silver had established probable cause on his claim for recovery in quantum meruit. Silver v. Jacobs, 9 Conn. L. Rptr. 358 (August 9, 1993, Hodgson, J.). On July 15, 1993, Silver filed a motion for summary judgment as to liability on the first three counts of the complaint. The parties have complied with the requirements of Practice Book § 380 with respect to the motions.
The purpose of summary judgment is to resolve "litigation when pleadings, affidavits, and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven,213 Conn. 277, 279 (1989). "A `material fact' is simply a fact which will make a difference in the result of the case. . . ." Yanowv. Teal Indus., Inc., 178 Conn. 262, 268 (1979). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such all issue." (Citations omitted.) Haesche v.Kissner, 229 Conn. 213, 217 (1994). "`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.'" (Citation omitted.) Id.
The plaintiff claims that he is entitled to summary judgment on the first count of breach of contract and that the defendants' motion should be denied. The plaintiff argues that the series of letters between the parties constitute a contract that was breached when the defendants failed "to escrow funds from the settlement of CT Page 2316 the Chatt case." It is further argued that equitable principles exist to calculate the value of the breach of that promise and all resulting damages. In addition, the plaintiff claims that "[t]he damages for that breach necessarily include the fee owed to the Plaintiff."
The defendants claim in their motion for summary judgment on count one that the "[p]laintiff cannot recover for breach of contract because (a) defendants made no promise to pay plaintiff any portion of the fee in the Chatt case and (b) defendants' refusal to hold funds was justified by the failure of a condition precedent . . . and by a failure of consideration. . . ." Moreover, the defendants claim that the alleged contract was too indefinite to be enforceable.
"A contract is a promise, or set of promises, for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." (Citations omitted.) Calamari Perillo, Law of Contracts #1-1, at 2 (2d ed. 1977). The terms and requirements of a contract must be definite and certain. (Citation omitted.) Fortier v. Newington Group, Inc., 30 Conn. App. 505,509, 620 A.2d 1321, cert. den., 225 Conn. 922,625 A.2d 823 (1993). Where a recited consideration is never given, "the court may either void the contract or imply a promise not explicitly stated." (citation omitted.) TIE Communications, Inc.v. Kopp, 218 Conn. 281, 292 (1991). Furthermore, if a contract contains a condition precedent, a party to that contract may refuse to perform if the condition precedent has not occurred.
"`A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . .'" K.A. Thompson Electric Co. v. Wesco., Inc.,27 Conn. App. 120, 124 (1992), quoting Lach v. Cahill, 138 Conn. 418,421 (1951). "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in light of all the surrounding circumstances when they executed the contract." Id.
In general, "a determination of what the parties intended by contractual commitments is a `question of fact. . . .'" GaynorElectric Co. v. Hollander, 29 Conn. App. 865, 872 (1993), citingThompson Peck, Inc. v. Harbor Marine Cont. Corp., 203 Conn. 123,130-31 (1987). Nevertheless, "`[w]here there is definitive contract language, the determination of what the parties intended CT Page 2317 by their contractual commitments is a question of law.'" Id.
Silver's claim of breach of contract was addressed by the court in granting a prejudgment attachment on the claim for recovery on quantum meruit. Silver v. Jacobs, 9 Conn. L. Rptr. 358
(August 9, 1993, Hodgson, J.). The court held that:
 "The actual documents relied upon by the plaintiff as setting forth such an agreement do not in fact obligate the defendant to pay the plaintiff anything other than the out-of-pocket disbursements. In the letter of July 10, 1989, Attorney Jacobs asked for Attorney Silver's `thoughts . . . with regard to the amount of work that you have done on the file and the amount you feel you are entitled to in connection with that work.' The letter contains no promise to pay. In his letter of August 4, 1989, the defendant expressly obligated himself to pay physicians' bills and other case-related disbursements and out-of-pocket costs expended by Attorney Silver, however he made no promise to pay legal fees and agreed only to `hold in my clients's fund account the amount required under your contingency arrangement until its disposition has been determined by agreement or by litigation.' There is no evidence of an agreement, either written or oral, by the defendant to pay anything to the plaintiff."
Id., 359. Moreover, Formal Opinion No. 31 of the Connecticut Bar Association and the applicable provisions of the code of ethics only obligate the defendant "to hold aside funds sufficient to satisfy any enforceable obligation by the clients to pay the discharged lawyer for the value of his services." (Emphasis added.) Id. However, "breach of a provision of the Code of Professional Responsibility does not create a cause of action." (citation omitted.) Id.
A fair reading of the series of letters exchanged between the parties leads to the conclusion that those letters constitute definitive contract language regarding a promise to "hold in [defendant's] client's fund account the amount required under [plaintiff's] contingency arrangement until its disposition has CT Page 2318 been determined by agreement or by litigation." Determination of the parties' intent as to their contractual commitment thereby becomes a question of law. Gaynor Electric Co. v. Hollander,supra. The defendants' promise to hold in the client's fund an amount required by the plaintiff's contingency arrangement was subject to the condition precedent of delivery of that agreement to the defendants. Where, as here, such delivery did not occur, the defendants had a right to refuse to perform, K.A. Thompson ElectricCo. v. Wesco, Inc., supra; and the generally accepted view is that, under the circumstances described herein, the defendants are excused from performance. That is so because if the condition precedent does not occur, then there can be no right to performance. See, Lach v. Cahill, 138 Conn. 418, 421 (1951). "A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. If the condition is not fulfilled, the right to enforce the contract does not come into existence." Id.
General Statutes, § 52-215c(a), requires that contingency agreements be in writing. An agreement in violation of the statutory provisions is a violation of the public policy underlying the statute and is therefore unenforceable. The plaintiff's failure to provide the Chatts with a written contingency agreement, a violation of the provisions of § 52-215C(a), cannot give rise to a right to performance from the defendants.
While no extensive body of law exists regarding the public policy articulated in § 52-215c(a), some guidance is provided by turning to the body of law concerning the public policy underlying the general requirement that home improvement contracts be in writing. General Statutes, § 20-429. A violation of § 20-429 is considered a violation of the public policy providing protection for homeowners from unscrupulous contractors. See Barrett Buildersv. Miller, 215 Conn. 316, 323-24 (1990).
"The facts of this case illustrate that the legislature could legitimately have determined that a home improvement contract `in writing and . . . [containing] the entire agreement between the owner and the contractor,' as § 20-429(a) requires, serves salutary evidentiary and cautionary policies in consumer protection." Id.,
325. In viewing § 52-251c(a) by way of analogy with § 20-429, to ascertain the public policy underlying the statute, it is apparent that there is a public policy of ensuring that lawyers act ethically in dealing with the public which they serve. See,Barrett Builders v. Miller, supra, 323-25. CT Page 2319
The legislature, in enacting § 52-251c(a), properly could have determined that because lawyers are trained negotiators who have an advantage over lay people in negotiating contracts, particularly contracts concerning the payment of fees and costs in personal injury cases, a written contingency agreement serves salutary evidentiary and cautionary policies in consumer protection.
The Connecticut Supreme Court has refused to enforce contract provisions that violate public policy. Konover Development Corp.v. Zeller, 228 Conn. 206, 231 (1994), citing Smith v. Crockett Co.,85 Conn. 282, 287 (1912); McCarthy v. Santangelo, 137 Conn. 410,412 (1951). Silver asks the court to enforce an unenforceable contract, one that not only violates public policy, but the enforcement of which would undermine the public's confidence in it's judicial system.
The defendants' motion for summary judgment on count one is granted and the plaintiff's motion for summary judgment as to liability on the first count is denied.
The second count of the complaint is grounded on the theory of quantum meruit. That issue was addressed by the judicial finding of probable cause at the hearing for a prejudgment attachment. While the defendants, in moving for summary judgment, rely on the refusal of our courts to enforce contracts that violate public policy, such reliance is misplaced where equitable principles of quantum meruit are invoked. Quantum meruit, like unjust enrichment, is a doctrine "allowing recovery on the theory of restitution, that is, the restoration to a party of something of which he was deprived because of the unjust enrichment of another at his expense." Burns v. Koellmer, 11 Conn. App. 375, 383 (1987).
In particular, "[q]uantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered." Id., citing Rossetti v. New Britain, 163 Conn. 283, 292
(1972).
Where a fee dispute exists between an attorney and a client, "a client has the right to discharge his attorney and to substitute another at any time with or without cause and in spite of any contract. . . ." (citation omitted.) Cole v. Myers, 128 Conn. 223,229 (1941). "[The attorney] should receive reasonable compensation CT Page 2320 for the work he had done up to that point, and not the agreed fee he probably would have earned had he been allowed to continue in his employment." Id., 230; also see, Marcus v. DuPerry, 223 Conn. 484, (1992) (permitting attorney to recover in quantum meruit from former client).
In Silver v. Arotsky, involving the same plaintiff present here, the court held that the plaintiff could not recover damages from a former client on the basis of an oral contingency agreement because an oral contract for contingent attorney's fees is legally insufficient. 4 CSCR 791, 792 (November 20, 1989, Berdon, J.). The court noted, however, that "when legal services provided to a client are lawful, but the method of compensating the attorney is prohibited, the attorney may recover for services under the theory of quantum meruit." Id., citing McKnight v. Gizze, 119 Conn. 251
(1934).
Where a fee dispute existed between attorneys, the Connecticut Supreme Court has held that because quantum meruit is an equitable principle, an original attorney could not recover the reasonable value of his services where he failed to deliver to the successor attorney, upon request, the case file or an accounting of the law firm's time spent working on the case. Bershtein, Bershtein Bershtein v. Nemeth, 221 Conn. 236, 243 (1992). The present case is distinguishable because there was no "indication [in Bershtein] whether the discharged law firm had a written contract with the client, and quantum meruit was denied because the Court found that the discharged firm, by failing to give up the file, had not acted equitably . . ." Silver v. Jacobs, supra, 360.
The court noted that:
 "While failure to provide a client with a written contingency fee agreement may give rise to a grievance for violation of the lawyer's ethical obligations, this court does not find that the defendant is likely to succeed on its defense that the failure to comply renders unenforceable a lawyer's claim for the value of services rendered in a file turned over to successor counsel."
Id. The plaintiff was authorized to attach the defendants' property to the value of $4,000.00 because the court found probable cause that the plaintiff would recover in quantum meruit. Id.,
CT Page 2321 360-61.
"An attorney's retaining lien is a possessory lien on a client's papers and files that the attorney holds until his fee has been paid." (Citations omitted.) Marsh, Day Calhoun v. Solomon,204 Conn. 639, 643 (1981). Moreover, "[a] self-executing attorney's retaining lien is not an absolute right but is merely a method for an attorney to protect his proper fee." Id., 645. Understandably, "[t]here are a number of exceptions to the right to impose a retaining or possessory lien." Id. In particular, a self-executing attorney's retaining lien cannot be used if the attorney has been discharged for good cause. Id.
The plaintiff argues that the affidavit of Mrs. Chatt, asserting that she discharged Silver for cause and retained Jacobs and "[n]ever agreed to any fee-sharing arrangement between the Jacobs office and Mr. Silver's office," is hearsay and should not be considered. That argument does not serve the plaintiff in meeting his burden on a motion for summary judgment to ". . . substantiate [an] adverse claim with evidence disclosing the existence of [a genuine issue of material fact]." Haesche v.Kissner, supra. There is no issue as to the fact that the Chatts relieved Silver of his responsibilities in representing their claim and thereafter requested Jacobs to pursue that claim. A claim for quantum meruit is an equitable principle and must be based on equitable conduct. See Bershtein, Bershtein Bershtein v.Nemeth, supra.
In order to prevail on a claim of quantum meruit against the defendants, the plaintiff must allege facts that show a promise by the defendants to pay the plaintiff and there was no such promise in the documents that form the contractual language discussed earlier. Moreover, the plaintiff's claim in this count has as its foundation the plaintiff's own violation of the code of ethics. Under such circumstances, enforcement of the plaintiff's claim would appear to undermine judicial integrity.
The "clean hands" doctrine serves notice to those seeking equity not to bring the burden of their own unethical conduct before the court. "One who seeks equity must also do equity and expect that equity will be done for all. See Sturgis v. Champneys, 5 Myl. Cr. 97, 105, 41 E.R. 308 (1839); 1 Pomeroy, Equity jurisprudence 419, § 385 et seq. (1881)." LaCroix v. LaCroix,189 Conn. 685, 689 (1983). "The application of the equitable maxim rests in the sound discretion of the trial court and generally CT Page 2322 should not be employed to insulate the party who asserts it from the consequences of his own wrongdoing." Cohen v. Cohen, 182 Conn. 193,204 (1980).
Equally important is that the theory of "[q]uantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. Rossetti v. New Britain, 163 Conn. 283,292, 303 A.2d 714 (1972). The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." Burns v. Koellmer, 11 Conn. App. 375,383-84.
Here, there is no basis for implying a contract between Silver and Jacobs. The letters exchanged between the parties constitute definitive contractual language of what the parties intended. The allegations of the second count are insufficient to support the theory of quantum meruit. See Kakalik v. Bernardo, 184 Conn. 386,395 (1981) ("the determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court.").
The plaintiff's theory of unjust enrichment in the third count of his complaint rests on the same basis as the second count. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479." Burns v. Koellmer, supra, 383. The allegations of the complaint must state sufficient facts to show that "the defendants were benefited, that the benefit was unjust in that it was not paid for by the defendants, and that the failure of payment operated to the detriment of the plaintiff." Id. The allegations by the plaintiff are insufficient to state a cause of action for unjust enrichment. "Both unjust enrichment and quantum meruit are doctrines allowing recovery on the theory of restitution, that is, the restoration to a party of something of which he was deprived because of the unjust enrichment of another at his expense." Burnsv. Koellmer, Id.
The agreement between the parties, evidenced by their written exchange, failed because of the plaintiff's failure to provide the necessary contingency agreement. That failure belies the claims of unjust enrichment and quantum meruit. CT Page 2323
Count four alleges tortious breach of contract. A party may recover punitive damages for "[b]reach of contract founded on tortious conduct. . . . Such tortious conduct must be alleged in terms of wanton and malicious injury, evil motive and violence, for `punitive damages may be awarded only for outrageous conduct, that is for acts done with a bad motive or with reckless indifference to the interests of others. . . .'" L.F. Pace Sons, Inc. v. TravelersIndemnity Co., 9 Conn. App. 30, 48 (1986). Again, absent the existence of an enforceable contract, there could be no breach. The claim fails because there is no genuine issue of material fact in dispute concerning the written exchange which expressed the parties' intent and which the court deems contractual. The allegations are insufficient to support a cause of action for tortious breach of contract.
The fifth count alleges misrepresentation and numerous exhibits were submitted in opposition to the defendants' summary judgment motion. None serve to establish a factual issue disputing the defendants' claim. The elements of fraudulent misrepresentation are "that a false representation was made as to a statement of fact, that it was untrue and known by the defendants to be untrue, that it was made to induce the plaintiffs . . . [to act], and that they acted upon the false representation to their detriment." Kavarco v. T.J.E., Inc., 2 Conn. App. 294 295-96 (1984). The burden of proof for fraud is clear and convincing proof. Following the hearing for a prejudgment attachment, the court held that the plaintiff did not establish probable cause "as to any damages resulting from misrepresentation." Silver v.Jacobs, supra, 9 Conn. L. Rptr. 361. That finding is herein adopted.
The plaintiff alleges that the defendants did not intend to perform the promise to escrow the funds required by the plaintiff's contingency agreement. This argument flies in the face of the fact that the promise to perform was contingent upon the plaintiff first providing the defendants with a written contingency agreement, thereby placing the defendants on notice as to what the parties intended to be protected and the amount required to be held in escrow. The failure to provide the contingency agreement requires a finding that there is no no genuine issue of material fact to support the plaintiff's opposition to the motion for summary judgment on this count.
In the sixth count, the plaintiff's claim of a CUTPA violation CT Page 2324 by the defendant rests upon a showing of an ascertainable loss of money with regard to the defendant's failure to escrow funds, the conduct which is claimed to be an unfair trade practice. That claim necessarily rests upon the plaintiff's claim of entitlement to restitution. This is a circular argument in that the plaintiff's claim again must rest upon the contingency agreement which the plaintiff was obligated to provide but such agreement would have to rest upon theories of quantum meruit and/or unjust enrichment. These theories have been discussed earlier. The allegations of violation of CUTPA are insufficient to support the plaintiff's claim because they lack a factual foundation.
The plaintiff's motion for summary judgment as to counts one, two and three is denied. The defendant's motion for summary judgment as to counts one, two, three, four, five and six of the complaint is granted.
BY THE COURT
LEANDER C. GRAY, JUDGE